## 9184

### OSTEEN v. SOUTHERN RAILWAY CO.

(86 S. E. 30.)

DEAD BODIES. PROTECTION. CARRIER AND PASSENGER. EXTORTIONATE CHARGES. DAMAGES. CHARGE. APPEAL AND ERROR.

1. DEAD BODIES—PROTECTION.—A friend or relative undertaking to afford burial to a dead body has a right to see that the body is protected, decently interred, and that its resting place is uninterferred with.

2. CARRIER AND PASSENGER—EXTORTIONATE CHARGES.—Both actual and punitive damages may be recovered by a passenger, who, as custodian of a corpse and in charge of a funeral party, had paid the legal charges for transportation, where the carrier's ticket collector subsequently in course of the journey annoyed such passenger and wrongfully extorted from him, under threats of compulsion, the payment of additional illegal and unreasonable charges, in order to avoid indignity to the corpse.

3. CHARGE—APPEAL AND ERROR.—A charge of a sound proposition of law, not wholly applicable to the issues, is not reversible error, unless the attention of the Court was directed to its inapplicability at the time and prejudice results to the appellant.

Before MAULDIN, J., Greenville, June, 1914.    Affirmed.

Action by R. M. Osteen against Southern Railway Company.   From judgment for plaintiff, defendant appeals, on the following exceptions:

1. The presiding Judge erred in not sustaining the first ground of the defendant's motion for a nonsuit, which was as follows:

"There is no evidence of any actual damages sustained by the plaintiff for which the defendant will be liable."

2. The presiding Judge erred in not sustaining the second ground of the defendant's motion for a nonsuit, which was as follows:

"As to the cause of action for punitive damages: There is no evidence of any wilful or reckless conduct on the part of the defendant as will justify the awarding of punitive damages."

3. The presiding Judge erred in not sustaining the third ground of the defendant's motion for a nonsuit, which was as follows:

"There is no evidence that the plaintiff had any such interest in the dead body being transported as will sustain an action for damages as for a tort or as for breach of contract; the rule of law being that no one has any right of property in a corpse and that only the heirs at law may sue for improper treatment thereof.

4. The presiding Judge erred in not sustaining the fourth ground of the defendant's motion for a nonsuit, which was as follows:

FOOTNOTE.—As to the right of property in dead bodies of human beings, see notes in 3 A. & E. Ann. Cas. 132, 14 *Ib.* 470, and Ann. Cas. 1912d, 1240.

"There is no evidence that, as alleged in the complaint, the rights of the plaintiff as a passenger have been invaded by the defendant."

5. The presiding Judge erred in not sustaining the fifth ground of the defendant's motion for a nonsuit, which was as follows:

"The evidence shows that the plaintiff, as far as the transportation of the corpse is concerned, was a volunteer; and from that relation no legal rights could emanate."

6. The presiding Judge erred in charging the jury as follows:

"I charge you, gentlemen, the law applicable to this case that when a man, an individual, buys a ticket for the purpose of becoming a passenger on a railway company it carries a contract between such ticket purchaser and the railway company. By virtue of that contract the intended passenger, or the passenger as it might be, is entitled to safe transportation to destination by virtue of that contract."

Specification: This statement of the law, however correct in the abstract, was inapplicable to the case and misleading to the jury. The plaintiff was suing, not for a breach of the contract for his own transportation, but upon the ground that the carrier had unlawfully exacted fare for the transportation of the corpse after it had been paid.

7. The presiding Judge erred in charging the jury as follows:

"The legal rate of fare for adult passengers is three cents per mile and a passenger has the right to pay three cents per mile on the train in cash fare, and if the agent of a carrier in charge of the collection of fares exacts and demands of a passenger more than three cents per mile upon pain and penalty of leaving the train, then such passenger may pay such excessive and unlawful fare and bring his action for damages against the carrier for such treatment. Now, then, this request goes on further, as follows: 'If the jury finds that the distance from Greenville to Gaffney is about fifty-

two miles, then the legal rate of fare should be $1.56, and if the defendant's agent in charge of collecting fares required the plaintiff to pay $2, then such amount of $2 as is in excess of $1.56 would be an unlawful and wrongful exaction; and if the defendant's agent and servant knew that such exaction was unlawful and in excess of the legal rate, and, nevertheless, if such agent in defiant disregard of the rights and feelings of the plaintiff required the payment of said $2, then the defendant would be liable for punitive damages in addition to actual damages, and punitive damages in such sum of money as the jury may see fit to assess and award in view of the testimony as will tend to deter the defendant and other carriers from any such wrongful and unlawful and defiant disregard of the rights and feelings of passengers in the future.' Now, gentlemen, I charge you that so far as that request is concerned it is altogether for you, but as to the general proposition of law involved in that request to charge, I charge you that it is the correct statement of the law. It is for you to say from all the evidence in the case whether or not such condition upon which this proposition of law is predicated prevails in this case. The legal rate of fare for adult passengers in this State as a matter of law is three cents a mile, and if the agent of a carrier in charge of the collection of fares exacted and demanded more than that upon penalty of ejecting the passenger in the event it is not paid, then such passenger may pay instead of being ejected, and if that occurrence comes about, then he has a right of action against the railway company."

Specification: This statement of the law, however correct in the abstract, was inapplicable to the case and misleading to the jury. The plaintiff was suing, not for a breach of the contract for his own transportation, but upon the ground that the carrier had unlawfully exacted fare for the transportation of the corpse after it had been paid.

8. The presiding Judge erred in charging the jury as follows:

"If the plaintiff explained to defendant's agent and servant in charge of the collection of fares, that he had paid $7.80 for six tickets and had only five in his possession, then it was the duty of such agent and servant to heed and consider the facts and explanation stated by the passenger, and if such investigation and consideration as the facts of the case justified would have led to the discovery by defendant's agent and servant, the ticket collector, that plaintiff had in fact bought six tickets and that one of said tickets had been delivered to the baggage agent in lieu of the check for the body of the dead person, and if defendant's said agent and servant, ticket collector, failed to heed the reasonable explanation of the passenger, and disregarded his statement of facts, and made no investigation, then if said agent and servant, the ticket collector, required the plaintiff to pay $2 addition for the right of transportation from Greenville to Gaffney, such requirement and exaction would be unlawful, and if the same was made in conscious and defiant disregard of the rights and feelings of the plaintiff, then the plaintiff would be entitled not only to actual damages, but to such punitive damages as the jury might conclude from the testimony would tend to deter the defendant and other carriers in the future from like conduct."

Specification: This statement of the law, however correct in the abstract, was inapplicable to the case and misleading to the jury. The plaintiff was suing, not for a breach of the contract for his own transportation, but upon the ground that the carrier had unlawfully exacted fare for the transportation of the corpse after it had been paid.

9. The presiding Judge erred in charging the jury as follows:

"When a dispute arises between a passenger and a conductor with reference to the right of transportation, it is the duty of the conductor to heed any reasonable explanation that the passenger may make, and if the passenger makes a correct statement, and if it turns out that the passenger was

telling the truth to the conductor, and if such truth would constitute the right to be transported, and if in the face of such explanation the carrier's conductor or ticket collector threatens to expel the passenger from the train and thus exact additional fare, such exaction would be unlawful. Now, it has been declared by the Courts, 'The rule requiring the conductor of a passenger train to heed the reasonable explanation of a passenger instead of allowing the conductor to demand and require the payment of additional fare on pain of expelling the passenger from a train works less hardship and inconvenience and expense on the carrier than the opposite would work on the passenger.' "

Specification: This statement of the law, however correct in the abstract, was inapplicable to the case and misleading to the jury. The plaintiff was suing, not for a breach of the contract of his own transportation, but upon the ground that the carrier had unlawfully exacted fare for the transportation of the corpse after it had been paid.

10. The presiding Judge erred in charging the jury as follows:

"The law allows punitive damages for the wrongful expulsion of a passenger and also of compelling him to pay money under threat of expulsion. Consequently the law is that a carrier must be allowed to resort to so harsh and extreme a measure only at the peril of being able to show that the carrier was right and the passenger was wrong."

Specification: This statement of the law, however correct in the abstract, was inapplicable to the case and misleading to the jury. The plaintiff was suing, not for a breach of the contract of his own transportation, but upon the ground that the carrier had unlawfully exacted fare for the transportation of the corpse after it had been paid.

11. The presiding Judge erred in not charging the defendant's first request, which was as follows:

"There is no evidence of any actual damages sustained by the plaintiff for which the defendant would be liable."

Specification: The request contained a correct principle of law applicable to the case.

12. The presiding Judge erred in not charging the defendant's second request, which was as follows:

"As to the cause of action for punitive damages, there is no evidence of any wilful or reckless conduct on the part of the defendant as will justify the awarding of punitive damages."

Specification: The request contained a correct principle of law applicable to the case.

13. The presiding Judge erred in not charging the defendant's third request, which was as follows:

"There is no evidence that the plaintiff had any such interest in the dead body being transported as will sustain an action for damages as for a tort or as for a breach of contract; the rule of law being that no one has any right of property in a corpse and that only the heirs at law may sue for improper treatment thereof."

Specification: The request contained a correct principle of law applicable to the case.

14. The presiding Judge erred in not charging the defendant's fourth request, which was as follows:

"There is no evidence that, as alleged in the complaint, the rights of the plaintiff as a passenger have been invaded by the defendant."

Specification: The request contained a correct principle of law applicable to the case.

15. The presiding Judge erred in not charging the defendant's fifth request, which was as follows:

"The evidence shows that the plaintiff, so far as the transportation of the corpse is concerned, was a volunteer; and from that relation no legal rights could emanate."

Specification: The request contained a correct principle of law applicable to the case."

The facts are stated in the opinion.

*Messrs. Cothran, Dean & Cothran,* for appellant, submit: *Plaintiff had no property right in corpse:* 23 S. C. 38. *Nor was he a blood relative:* 44 L. R. A. 243; 14 L. R. A. 85; 114 N. W. 353; 169 Mass. 57; 47 N. E. 401; 69 Am. Dec. 284; 13 Cyc. 281; 9 L. R. A. 514; 68 L. R. A. 956; 142 S. W. 775; 16 L. R. A. (N. S.) 407; 7 L. R. A. (N. S.) 1019; 126 N. Y. S. 444; 77 S. C. 148. *Passenger's duty to furnish information to conductor:* 97 S. C. 153.

*Mr. J. J. McSwain,* for respondent, cites: *As to rights of friend in corpse:* 8 A. & E. Enc. of L. 834, 835; 13 Cyc. 268, 280, 281; 37 N. Y. Sup. 471; 23 S. C. 25; Cooley, Torts (1906) 498, 499, 500, 501, 502, 503 and 504; 60 How. (N. Y.) 368; 61 S. E. 278; 16 L. R. A. (N. S.) 405; 68 L. R. A. 956; 91 S. E. 41, 49 and 50; 57 L. R. A. 771; 14 L. R. A. 336; 51 S. E. 24; 142 S. W. 775. *As to excessive verdict:* 64 S. C. 514; 69 *Ib.* 327; 87 S. C. 184; 88 S. C. 7; *Ib.* 421; 75 S. C. 116. *Charge not prejudicial:* 80 S. C. 410; 74 S. C. 410. *Right of action:* Hutch. Carriers, sec 1025.

August 27, 1915.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This was an action tried before Judge Mauldin, and a jury, at the June term of Court, 1914, for Greenville county, and resulted in a verdict in favor of the plaintiff for $600. After entry of judgment, defendant appealed. The action was for damages for alleged negligent and wilful conduct of the defendant in matters complained of. The plaintiff in substance alleged: That on February 9, 1914, he bought six tickets from Greenville to Gaffney for the transportation of a funeral party consisting of himself and four others and the dead body of his sister-in-law, Mrs. Peace; that the ticket for the corpse was handed to the station baggage agent by the undertaker, who gave him a check for the coffin; that on the train he presented to the collector the five

tickets for the living members of the party; that he did not think to present the baggage check "representing the right of transportation for the corpse;" that although he protested that he had bought a ticket for the corpse, the collector demanded and collected fare for it, and collected seventy cents in excess of the legal rate; that the conduct complained of was a violation of "the rights and feelings of the plaintiff as a passenger," to his damage $2,000.

The answer of the defendant was a denial of allegations of the complaint.

The first five exceptions allege error on the part of the trial Judge in not granting defendant's motion for a *nonsuit.*

The first two, on the ground that there was no evidence for actual or punitive damages for which defendant was liable, and that there was no evidence that the plaintiff's right as a passenger had been invaded by the defendant, and that as far as the transportation of the corpse was concerned he had no legal rights that would entitle him to recover.

The evidence shows that the plaintiff was a brother-in-law of the deceased, and at the request of the husband of the deceased he took charge of the necessary arrangements to transport the body from Greenville, where deceased died, to Gaffney, where the burial was to take place. That the husband was dazed and prostrated almost with grief at the death of his wife, and from this alone the inference can be drawn that the plaintiff was the representative of the husband and in charge of the party who accompanied the body for burial.

He purchased the ticket for the corpse, and the undertaker got the check from the station baggage agent, and the corpse was received by the defendant for transportation duly checked, and the only thing the plaintiff was expected to do was to board the train on the ticket that he had purchased which entitled him to ride to Gaffney, S. C., and upon arrival there, present the check and receive the corpse. He was entitled to ride in comfort, free and unmolested. The ticket

collector had nothing to do with the body that was in the baggage car properly received, and checked by the proper party entitled to do so. The ticket collector not only demanded fare for the corpse, that he had no right to do, but showed that he was careless and incompetent not only in this, but that he did not know what the fare was from Greenville to Gaffney, and demanded seventy cents, in excess of the legal rate, which he virtually extorted from plaintiff when he was on a sad mission, and made him uncomfortable and no doubt vexed and annoyed him. Plaintiff was not a volunteer in the sense complained of. He was a brother-in-law of the deceased and acting in behalf of the family and at their request in providing for the transportation of the deceased to the place of burial.

While it has been decided in *Griffin* v. *Ry. Co.,* 23 S. C. 25, that under the common law there can be no property in a corpse, and that decision was correct on the facts presented in that case, it is to be remembered that the common law of England had nothing to do with burial of deceased persons, etc., but that the Ecclesiastical Court had jurisdiction over such matters and not the Courts of common law. This Court will not commit itself to such a barbarous and savage doctrine as to hold that when a person dies no one has such a property interest in the body as to see the body is decently interred, and resting place uninterferred with, and a relative or friend has a right to see that the body is protected, and these feelings in relation thereto protected.

The case at bar shows that Osteen had a peculiar interest as custodian by appointment of the husband, and as a relative, to carry the body to its final resting place, and that the demands of the ticket collector to extort illegal and unreasonable additional fare, even seventy cents in excess of regular fare, was enough to show that an incompetent agent of the defendant was allowed to do this, and was sufficient to sustain the verdict of the jury to actual

and punitive damages. It was held in *Kelly* .v. *Tiner,* 91 S. C. 41, 74 S. E. 30, that a relative or friend had the right to prevent the desecration of a graveyard where their relatives or friends were buried, and certainly in the case at bar the plaintiff under the facts of the case had the right to prevent any indignity to the corpse which was being transported for burial under threat of compulsion by the ticket · collector, and by means of such compulsion money was wrongfully and unlawfully extorted from plaintiff.

These exceptions are overruled.

The sixth, seventh, eighth, ninth and tenth exceptions allege error on the part of his Honor in his charge to the jury, and complain that, even thought the propositions of law charged were in the abstract· correct, they were inapplicable to the case. It is the duty of the Court to declare the law to the jury, and in doing so it is better to fully charge than not to charge enough, provided, what is charged is correct proposition of law, and we fail to see how any statement made by his Honor as complained of worked harm or prejudice to the defendant. The propositions of law charged were sound, and even if not wholly applicable to the issues presented by the pleadings, is not reversible error, unless the Court's attention was directed to it at the time, and unless prejudice results to the complaining party. *Nickles* v. *Ry. Co.,* 74 S. C. 102, 54 S. E. 255; *Plunkett* v. *Insurance Co.,* 80 S. C. 410, 61 S. E. 893.

The contract was to transport the remains, and the plaintiff and his party as members of the family, either as mourners or a part of the funeral party as friends of the deceased and her surviving family, and as such the plaintiff, being in charge of the corpse, having a check therefor, had a cause of action against the carrier, who had undertaken to transport the corpse, and threatened to breach the contract by its agent, clothed with a "little brief authority," making an unlawful and unjust demand for a fare that had already been paid, and even more than what

would have been the fare if it had not been previously paid. The plaintiff had paid for the transportation of the corpse and had to pay a second time more than the legal fare, and this was exacted virtually under threats and compulsion such as to make it a "holdup." These exceptions are overruled.

Exceptions eleven, twelve, thirteen, fourteen and fifteen are overruled by what had already been said. The ticket collector had nothing to do with the transportation of the body according to the proof, and he unlawfully and wrongfully annoyed a passenger, who was in charge of the same, a brother-in-law and a friend of the deceased wife and surviving husband.

It is the right and duty of the living to bury their dead, and they have such interest in the remains as to enable them to carry the remains to the graveyard, and give the remains Christian and decent interment without interference from any one. This can be done either by the relatives or friends of the deceased. It is their moral and legal duty, and to hold otherwise would be to relapse in the ignorant and savage custom of the dark ages, and be repugnant to every Christian and civilized prompting of one's heart and instincts, and it might as well be understood that no argument or sophistry can convince that in a Christian country the dead body of a person is entitled to no more consideration and protection than any article of merchandise. It shocks and outrages all of our finer instincts and sensibilities, conscience and common sense.

All the exceptions are overruled.

Judgment affirmed.