15209

HARRISON v. ATLANTIC COAST LINE R. CO. *ET AL.* (2 Cases)
CRADDOCK v. SAME

(13 S. E. (2d), 137)

*Messrs. Harley & Harley, Douglas McKay* and *J. G. Mc-Cutcheon,* for appellants,

*Messrs. Brown & Watts* and *Blatt & Fales,* for respondents,

February 4, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

The appeal involves three cases growing out of a railroad crossing accident in the Town of Barnwell, which resulted in the death of Mr. R. W. Harrison and his wife, Mrs. Hattie Harrison, both of whom at the time of the accident were traveling in a Model T Ford automobile, driven by Mr. Harrison.

The two major actions were brought under Lord Campbell's Act for wrongful death, and the third action was brought under the survival statute for damage to the automobile. These three cases by agreement were consolidated and tried together. Judgments were rendered against the defendants in the amount of $10,000.00 actual damages in each of the cases for wrongful death, and for $100.00 actual damages in the property damage suit. The trial Judge, upon motion for a new trial, reduced the verdicts in the death cases to $5,000.00 each, and these reductions were duly accepted of record.

The complaint contains the usual specifications of negligence appertaining to railroad crossing cases, including failure on the part of the train crew to keep a reasonable lookout for travelers; in running the train in question over the crossing at a high and dangerous rate of speed and in excess of the speed permitted by an ordinance of the Town of Barnwell, and at a greater rate of speed than was reasonable and proper at the time and place; and failing and omitting to give statutory crossing signals. The complaint likewise charged common-law negligence.

The defense insisted upon in the lower Court, and urged here upon appeal, is that the Harrisons, husband and wife, were guilty of gross and willful negligence in approaching and entering upon the crossing, which negligence contributed as a proximate cause to the fatal accident.

On September 2, 1939, about midday, Mr. and Mrs. Harrison, both of whom were over seventy years of age, were leaving Barnwell for their farm home in the country. They drove along Charleston Street (State Highway No. 64), and their way lay across the tracks of the defendant railroad company. They were in normal health and spirits, and there is no evidence that either of them suffered from impaired sight or hearing. At the crossing in question, with which they were familiar, the railroad tracks run east and west, and the street or highway on which the Harrisons were traveling crosses the tracks at an angle of seventy degrees. On this appeal the reviewing Court must take the view of the evidence most favorable to the verdict, and give it the strongest probative force of which it will admit. Hence, although the testimony is in conflict thereabout, we adopt that of the plaintiff's witnesses to the effect that the train crew failed to give the statutory crossing signals, or any signal at all, giving notice of the approach of the train to the crossing; that the passenger train which collided with the automobile was running at a speed of about thirty to thirty-five miles per hour,—in violation of the twelve-mile ordinance of the City of Barnwell; and that the train was about two hours behind its scheduled time.

The Harrisons approached the crossing with their automobile under control and with the brakes in good condition, at a speed estimated to be ten to fifteen miles per hour. It is claimed that certain obstructions on their left either partially or completely obstructed their view of the train which was coming from that direction. Several photographs and a diagram of the crossing and its surroundings were introduced in evidence. It is admitted by the defendants

that the view of the Harrisons to the left was completely obstructed until the automobile reached a point on the highway about fifty feet from the main line track.

The first obstruction shown by the evidence, which of necessity had to be cleared before a traveler could see anything to the left, was an oil house of the Standard Oil Company enclosed by a wire fence located about sixty-five feet from the track. A tank oil car of the defendant railroad company was on a bulk service track adjacent to the oil company building and between it and the main line tracks, which further tended to narrow the line of vision to the left. Between the service track and the main line there was a cross-road or alley, estimated to be about fifteen feet wide, and running parallel with the railroad which connected Charleston Street crossing with Marlboro Street crossing about 460 feet distant to the left. At the point where this connecting street left Charleston Street, upon which the Harrisons were traveling, a large truck was parked, and the testimony shows that in this cross street there were several other parked automobiles and trucks of various kinds, which plaintiff contends made it difficult, if not impossible, for the Harrisons to get an extended view of the track to the left as they approached the crossing. A cotton gin, located on this cross street about midway between the two crossings, was in operation, and, at the peak of the ginning season, was making considerable noise. One of the witnesses for the plaintiff testified that when the automobile reached a point on the highway about fifty feet from the crossing, he saw Mr. Harrison look to his left and then proceed on to the crossing. As he got on the track the defendant's train coming from his left, struck the automobile between the left front wheel and the left rear wheel. The automobile lodged on the cowcatcher, and in some manner was carried sixty yards or more before the train was stopped. Mr. Harrison died instantly. Mrs. Harrison survived about one hour. Divers witnesses for the plaintiff testified that the view to the left was well nigh obstructed.

Witnesses for the defense testified to the contrary, and said that from a point fifty feet from the track there was nothing to obscure vision to the left.

There was testimony on behalf of the defendants tending to show that the train had slowed preparatory to stopping at the Barnwell passenger station, which was just a few feet west of the highway, and that the defendants had fully complied with the statute law by blowing the whistle and ringing the bell. Two witnesses for the defendants who were sitting in an automobile near the highway saw the Harrison car pass them going toward the crossing, and they testified that as the automobile passed them they saw Mr. Harrison's head through the small opening in the back of the automobile, and observed that he did not turn his head to the right or to the left as he approached and entered upon the crossing. According to the defense, the speed of the train had been reduced to about six or eight miles per hour. Neither Mr. Chase, the conductor, nor any other member of the train crew except the engineer, witnessed the accident. At the conclusion of all of the evidence, the jury were taken to the crossing and viewed the entire scene.

The defendants ask the Court to declare as a matter of law that the decedents were guilty of gross and willful contributory negligence, and would have the Court hold that the trial Court erred in refusing to direct a verdict upon the ground that the driver of the automobile came upon the crossing in full view of the approaching train, which could have been seen by them from a point fifty feet from the railroad track, for a distance of more than 460 feet.

The duty of a traveler in approaching a railroad crossing and before entering thereupon has been so often declared by this Court in adjudicated cases, and is so well settled and understood by the profession, that it needs no further elaboration. The degree of caution which the law requires has been stated so recently by this Court that to repeat it here would add nothing to its force. It is sufficient merely to refer to some of the cases in which that duty is discussed

and defined, and by so doing avoid encumbering this opinion with useless repetition: *Carter v. Atlantic Coast Line Railroad Co.,* 192 S. C., 441, 7 S. E. (2d), 163, 168; *Carter v. Atlantic Coast Line Railroad Co.,* 194 S. C., 494, 10 S. E. (2d), 17; *Bingham v. Powell,* 195 S. C., 238, 11 S. E. (2d), 275; *Cook v. Atlantic Coast Line Railroad Co.,* 13 S. E. (2d), 1, opinion filed January 15, 1941.

What the law requires, and all that it does require, is that a traveler approaching a railroad crossing upon a public highway shall use ordinary care to avoid injury, that is, the rule of the prudent man. As to what constitutes ordinary care in such cases is fully defined and settled by the authorities to which we have referred. Where one approaching a railroad crossing of the kind above indicated is injured, and the facts and circumstances are not controverted, and the reasonable inferences from such facts and circumstances are unequivocal, and can lead but to one conclusion, the Court will declare, as matter of law, whether the party injured was guilty of contributory negligence. But in practice it often occurs that the facts and circumstances surrounding a particular case are such as to warrant different inferences, so that one impartial, sensible man may draw the inference and conclusion that the injured party was guilty of negligence, while another man, equally as impartial and equally as sensible, might draw a different conclusion, and in such cases the Court will not adjudge the question of negligence, but will leave it to the jury under proper instructions. However, the question presented by this appeal is not whether the Harrisons exercised ordinary care, but whether they failed to exercise slight care, and hence were guilty of gross or willful negligence, contributing as a proximate cause or the injury.

It is evident from our narration of the facts and circumstances immediately preceding the collision that very few seconds intervened between the time Mr. Harrison looked to his left for approaching trains and the time at which he was struck. That he was not entirely heed-

less is made clear by the fact that he did look. And it is altogether probable that had the passenger train which collided with him been running at the rate of speed fixed by the city ordinance above mentioned, he would have gotten across the railroad crossing in safety. The plaintiff's evidence shows that the decedents were struck by a train moving nearly three times as fast as the speed fixed by the ordinance of the city. The violation of a valid city ordinance regulating the speed of trains within a municipality, and the violation of the statutory law requiring the giving of crossing signals, resulting in injury to another, is negligence as a matter of law, but the issue of proximate cause is for the jury. The mere omission to give the statutory signals and the failure to observe the municipal speed ordinance do not relieve the traveler from the imputation of negligence if he fails on his part to exercise ordinary care in looking and listening.

In the absence of some evidence to the contrary we think the Harrisons had the right to presume that the defendants would obey the state law and would give the statutory signals upon approaching the crossing; and, while the wrongful conduct of the defendants in this regard would not excuse the Harrisons from the exercise of slight care, yet in determining whether they did use such care their conduct is to be judged in the light of such presumption.

Some insight as to the limited opportunity which the decedents had for observing the coming of a train, in view of the obstructions which are said to have obscured their view, may be gained from the testimony of the defendant, B. S. Artope, the engineer, who, at his post on the right-hand side of the engine cab, was looking out for the crossing. He said that as the train approached the crossing, "I looked up the highway and I did not see anything at all coming towards the crossing and I proceeded to go on about my business to make my stop, where I should have made it and just as I got over the crossing, or on the crossing, something flashed black and I turned my head quickly and before I could

know what it was, it ran into me; it was this automobile." The foregoing testimony also has its bearing upon whether or not the defendants failed to keep a proper lookout for travelers upon the highway.

If, in case of an accident at a crossing, it appears that the person injured did look for an approaching train, it would not necessarily follow as a rule of law that he was remediless because he did not look at the precise place and time when and where looking would have been of the most advantage. Many circumstances might be shown which could properly be considered by the jury in determining whether the deceased exercised due and reasonable care in making his observations. The presence of obstacles obstructing the view, and other diverting influences, may be considered in determining whether the person injured did in fact look and listen before attempting to cross the track, and fairly discharged the duty imposed upon him, even though it should appear that if he had looked at another instant of time or from another point he would have seen the train. There is much evidence in the record as to how far the approaching train could be seen from various points. Such evidence is frequently very reliable and very satisfactory, but it is not necessarily conclusive. Such experiments are made when the witnesses are calm, and their whole minds, free from any distraction, are intent upon the matter in hand. They are seldom conclusive because they cannot be made under the precise circumstances which attended the transaction to be investigated. And for this reason unless negligence is shown as a matter of law it is better to leave the issue in the hands of twelve men.

It is firmly established in this jurisdiction that if the inferences properly deducible from the evidence are doubtful, or if they tend to show both parties guilty of negligence or willfulness, and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the ques-

tion must be submitted to the jury. *Ford v. Atlantic Coast Line Railroad Co.,* 169 S. C., 41, 168 S. E., 143.

■ In determining whether or not a traveler crossing a railroad at a highway crossing is guilty of contributory negligence, so as to bar recovery by him for an injury received by being struck by a train at such crossing, the jury must consider all of the facts and circumstances shown in the case, including the speed of the train, the fact that such train did or did not give the usual crossing signal, the distance at which an approaching train could be observed by one on going upon the crossing, the care exercised by such injured party before entering thereon, the presence or absence of obstructions, and if from all of these facts it appears that the injured party has taken such precautions as would have been taken by one of ordinary prudence under the circumstances, he will not be held guilty of contributory negligence. The evidence was conflicting on each of these controlling points.

■ In our opinion, the evidence in this case permits the inference that Mr. Harrison was not guilty of failing to exercise slight care for his safety, and under applicable rules of law, we think the lower Court committed no error in overruling the motion for a directed verdict and submitting the case to the jury.

One other issue is presented: The appellants complain that there was no evidence in the case warranting the charge given by the Court on sudden and imminent peril, and it is said that the injection of such an issue into the case was prejudicial.

The engineer of the train, Mr. Artope, who was on the side from which the decedents approached the crossing, testified that because of obstructions he had to get within 100 or 150 feet of the crossing before he would have a very good view up the highway on which the Harrison car was approaching; and that he did not see the Harrison car until the instant of collision. The engineer was in the cab, several feet back from the front of the locomotive. It may be pre-

sumed that the Harrisons did not intend to commit suicide, and we think it fairly inferable that Mr. Harrison became conscious of the approaching train only a moment or two before the engineer saw him, and at a time when the automobile must have been practically upon the track, or very close thereto. It would be hard to imagine a situation fraught with greater peril or one more calculated to cause sudden terror and fright. Testimony for the defense was to the effect that the automobile proceeded straight on. In such an emergency did Mr. Harrison's safest course lie in applying the brakes, or in attempting to get across the track, or in turning the car to one side? The defense contends that if he had looked in time he could have turned his car to the left. The Harrisons are dead, and in the nature of the case no evidence was available from them as to the sudden peril in which they found themselves. This being so, their situation could have been gathered from the circumstances and conditions as well as from direct testimony.

We do not think the charge was inapplicable or prejudicial. Furthermore it has been held that a party is not entitled to complain of an instruction giving the jury the correct principles of law on the ground of absence of evidence to support it unless the Court's attention was directed to it at the time, and unless prejudice results to the complaining party. *Osteen v. Southern Ry. Co.*, 101 S. C., 532, 86 S. E., 30, L. R. A., 1916-A, 565, Ann. Cas., 1917-C, 505; *Hancock v. National Council Junior Order United American Mechanics*, 180 S. C., 518, 186 S. E., 538; *Burns v. Goddard*, 72 S. C., 355, 51 S. E., 915.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MR. JUSTICE BAKER and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.

MR. JUSTICE STUKES did not participate in the consideration or decision of this case.