15949

BOWERS *ET AL.* v. CHARLESTON & W. C. RY. CO.

(42 S. E. (2d) 705

*Messrs. Howard L. Burns,* of Greenwood, *M. G. McDonald,* of Greenwood, and *J. W. Manuel,* of Hampton, for Appellant, cite:

*Messrs. George Warren* and *Randolph Murdaugh,* of Hampton, for Respondents, cite:

May 16, 1947.

BAKER, CJ.: At the public street crossing very near to the depot of the appellant in the Town of Hampton, at about 9 o'clock a. m., on June 24, 1944, respondents' intestate, Walter Rodell Bowers, a boy ten years of age, was fatally injured in a collision with one of appellant's through freight trains, from which injury he died within twenty minutes. An action was brought against the appellant for his wrongful death, resulting in an award of damages in the sum of $3,000.00, which award was paid.

Thereafter, an action was commenced by the respondents against the appellant, to recover damages on account of the conscious pain and suffering undergone by the said Walter Rodell Bowers, deceased, from the time of his injury until his death, approximately twenty minutes, as aforesaid.

Upon a trial of this case in the fall of 1945, at the close of all the testimony, appellant moved for a direction of verdict in its behalf both as to actual and punitive damages, on several grounds, but in the light of the exceptions now before the Court, it is necessary that we refer to only one, to wit, that there was no evidence of any conscious pain and suffering between the injury and death, except such as was substantially contemporaneous with death or merely incidental thereto.

The motion was refused, and the jury returned a verdict in behalf of the respondents in the sum of $10,000.00 actual damages, and for the sum of $15,000.00 punitive damages. Motions for judgment for appellant, *non obstante veredicto,* and for a new trial, were made. The first of said motions was refused outright, and the second was refused conditioned up-

on the respondents remitting upon the record the sum of $5,-000.00 of the judgment to be entered on the amount awarded for punitive damages, which amount was duly remitted by the respondents, and judgment entered accordingly. This appeal followed.

The exceptions of the appellant raise the issues (1) that there was no evidence from which it could be inferred that respondents' intestate suffered any conscious pain between the time of the collision and his subsequent death (approximately twenty minutes), such evidence as there was tending to so prove, being wholly speculative and conjectural; and that such pain as the decedent may-have suffered was substantially contemporaneous with death or merely incident thereto; (2) that the jury's verdict was so excessive as to indicate that it was the result of prejudice, caprice, passion, or some other consideration not founded in the evidence, and that the overruling of its motion for a new trial constituted abuse of judicial discretion; (3) improper argument by one of respondents' counsel; and (4) alleged error in the trial Judge's charge to the jury.

It will be seen from the foregoing, and from a secondary appeal in reference to the settlement of the case for appeal, that no issue is raised as to the negligence and willfulness of the appellant.

The decision of this case has given the members of this Court grave concern, except as to the exception relating to the alleged improper argument of Mr. Murdaugh, of counsel for respondents. If Mr. Murdaugh used the language attributed to him, the objection thereto should have then and there been made accompanied by a motion that a mistrial be ordered, but such was not called to the attention of the trial Judge by objection or otherwise until after the rendition of the verdict by the jury and on the hearing of the motion for a new trial; and said counsel does not admit that he used even substantially the language attributed to him.

The testimony is both meagre and weak that the deceased, in the short space of time between his injury and death, suffered conscious pain, but we are bound to view the testimony, on a motion for a directed verdict (as was the Circuit Judge), in the light most favorable to the respondents (plaintiffs), and if there is more than a scintilla of evidence from which the jury could draw a reasonable inference that the decedent was conscious of pain and suffering, this issue had to be submitted to the jury. When the engine and train of cars collided with the respondents' intestate, he was lodged on the front of the engine and carried about thirty-two car lengths down the track. Henry Shepperd, a witness for the respondents, who helped bring the injured boy back to the crossing near the depot of the appellant, where the collision occurred, testified that the injured boy was whinning and drawing up, and expressed the positive opinion (without objection) that the boy was suffering; and another witness, A. J. Nix, in whose automobile the injured boy was placed and transported to a physician's office, testified that he groaned after he had him in his car and was apparently struggling for breath, and that he moaned two or three times when his automobile reached another crossing, and had to wait for the train to clear the crossing. Dr. A. J. Hayne, the physician to whose office the boy was carried, testified that when he gave the boy a hypodermic to stimulate him, he jerked his arm up and that could have indicated that he reacted or felt pain from the insertion of the hypodermic needle in his arm; but he also testified that this could have been a possible reflex action of the nerves and muscles, and refused to give an opinion if at that time the boy was conscious or unconscious. (It might be noted in passing that the testimony of Mr. Shepperd and of Mr. Nix was not uncontradicted.)

In the case of *Peeples v. Seaboard Air Line Railway,* 115 S. C. 115, 104 S. E. 541, 542, it was held that even if Mr. Peeples could not speak after his injury "he asked to have his shoe taken off, because it hurt him, and, when asked if

he wanted water, he bowed his head." (We assume that the Court meant in stating that he asked to have his shoe taken off that he indicated that this is what he wanted; otherwise there would not have been any occasion for stating that "even if he couldn't speak, etc.") The testimony in the *Peeples case* clearly showed conscious pain and suffering on the part of Peeples. In the case of *Camp v. Petroleum Carrier Corporation et al.,* 204 S. C. 133, 28 S. E. (2d) 683, there was testimony from which it could be inferred that the deceased, Clyde M. Camp, groaned after his injury, but this Court held that there was no evidence that he was conscious of pain and suffering. In the most recent case decided by this Court on the question of conscious pain and suffering, to wit, *Croft v. Hall,* 208 S. C. 187, 37 S. E. (2d) 537, the Court remarked that the factual showing was weak but that there was more than a scintilla of evidence tending to prove that the intestate consciously suffered and quoted testimony from the mother of the injured girl, wherein she testified that she could hear her daughter making terrible noises, she was talking, and her knee and leg were going, and that in her opinion if anybody ever suffered her daughter did, and further than in her opinion her daughter recognized her and opened her eyes and looked at her several times.

The evidence of conscious pain and suffering by the decedent in the instant case is stronger than was the evidence in *Camp v. Petroleum Carrier Corporation, supra,* though much weaker than the evidence in *Peeples v. S. A. L. Railway, supra,* and *Croft v. Hall, supra.* At best, it is a "hair line" case, but under our system of jurisprudence there was, viewing the testimony in the light most favorable to the respondents (plaintiffs), sufficient evidence to require the submission of the case to the jury.

The large amount of the verdict, especially considering the short space of time which the deceased survived the injury, has given the Court great concern. In 1915, a verdict for $5,000.00 damages for pain and suffering was affirmed

by the United States Supreme Court in *St. Louis I. M. & S. R. Co. v. Craft,* 237 U. S. 648, 35 S. Ct. 704, 59 L. Ed. 1160, where the injured party survived the injuries for thirty minutes. The Court there stated that the award did seem large for so short a period of time, but that the duty and responsibility of dealing with that matter rested upon the Courts below. While this is to a considerable measure true when this Court is dealing with excessive verdicts rendered and permitted to stand in the Courts below, yet it has been recognized for at least one hundred and twenty-five years, that this Court is not powerless. *Nettles v. Harrison,* 2 McCord 230; *Poppenheim v. Wilkes,* 2 Rich. 354; *Josey v. The Wilmington and Manchester Railroad Co.,* 11 Rich. 399; *Bodie v. Railway Co.,* 66 S. C. 302, 44 S. E. 943; *Bing v. Atlantic Coast Line R. Co.,* 86 S. C. 528, 68 S. E. 645; *Huggins v. Atlantic Coast Line R. Co.,* 96 S. C. 267, 79 S. E. 406; *Southerland v. Davis, Agent,* 122 S. C. 511, 115 S. E. 768; *Poole v. Saxon Mills,* 192 S. C. 339, 6 S. E. (2d) 761.

The power and duty of the Supreme Court to reverse a judgment entered upon a jury verdict where the record clearly discloses that the amount of the verdict is unconscionably high, and has no relation to any reasonable measure of damages for the injury inflicted, has been rarely exercised, but nonetheless exists and when, as in this case, the exercise of the power is invoked, it is the duty of the Court to examine the record in the light above stated.

This power is analogous to that of a trial judge, to the extent that in either Court a judgment based on a verdict of the character above indicated will be set aside by the granting of a new trial. The difference between the powers of the two Courts is that in the case of the Circuit Court, the error of the jury in rendering an unreasonable verdict can be cured either by granting a new trial absolute, or by granting a new trial *nisi,* whereas in the case of Supreme Court there is no power to grant a new trial *nisi.* The relief

that can be afforded here is the granting or the refusal of a new trial.

Another pertinent factor in the situation, especially as applied to the facts of the present case, is this: Where the verdict is deemed to be so excessive as to require that some relief be granted the defendant, either one of two situations may arise, whether the problem is presented in the Circuit Court or in the Supreme Court.

In one class of cases the verdict may be deemed excessive, and yet the case may be such as to indicate merely undue liberality on the part of the jury. To reduce the verdict in such a case to proper proportions by the granting of a new trial *nisi* works substantial justice to both parties to the litigation, and promotes the general policy of the courts to bring litigation to an end without unnecessary repetitious trials. In such cases the verdict is not inherently vicious, in the sense that it indicates that the jury was moved by passion or prejudice, rather than by a due regard for the facts of the case and the instructions of the Court. The vice in such a verdict is merely that, in the view of the Court, it is not in accord with accepted judicial standards for measuring damages under the facts of the particular case. As aforestated, it is in this class of cases that the Circuit Court may in its discretion grant a new trial *nisi*. Where it has refused to do so, this Court will not usually interfere, the matter being one within the sound discretion of the Circuit Court.

In the other class of cases the verdict is so grossly excessive as to be deemed to be the result of a disregard of the facts and of the instructions of the Court, and to be due to passion and prejudice rather than reason. Where this is found to be the case, it is the verdict itself, rather than merely the amount of the verdict, which is inherently vicious, and the verdict should not be permitted to stand whether the question arises in the Circuit Court or in this Court.

Applying these principles to the present case, it appears to the writer hereof that a verdict of $10,000.00 actual dam-

ages, and $15,000.00 punitive damages, for pain and suffering extending at the most for a period of not more than twenty minutes, is so grossly excessive as to call for the exercise by this Court of its power to grant a new trial on the ground of the excessiveness of the damages awarded. Whether the amount of the verdict is considered by way of comparison with other verdicts in similar cases, or from the standpoint of commonly accepted standards of compensation, or from judicial usage, the writer cannot escape the conclusion that the size of the verdict clearly indicates that the jury was not guided by the facts adduced, or by the instructions of the Court, but for some reason was influenced in its decision by considerations which cannot properly support a verdict. Whether this be due to sympathy for the litigant, or a sense of outrage arising out of the jury's view of the circumstances of the accident, or out of passion or prejudice engendered by other considerations, the result is the same.

However, the other members of the Court, although disturbed over the amount of the verdict, are of opinion that this Court cannot say as a matter of law that the trial Judge committed an abuse of discretion in failing to reduce the verdict as rendered by the jury more than he did, or grant a new trial, basing their conclusion on the greatly depreciated value of the dollar. The writer concedes that there is merit in their position, and that other courts of last resort for which we have great respect have recognized such views as sound, long prior to the present reduced purchasing power of the dollar. *P. Lorillard Co. v. Clay,* 127 Va. 734, 104 S. E. 385; *Talbert v. Chicago, R. I. & P. Ry. Co.,* 321 Mo. 1080, 15 S. W. (2d) 762; *National Fruit Product Co. v. Wagner,* 185 Va. 38, 37 S. E. (2d) 758.

There are numerous cases from various other jurisdictions which hold that the purchasing power of the dollar is to be considered in determining the amount of damages recoverable in a tort action, but it is needless to burden this opinion with the citation of these cases. It is suf-

ficient to say that such is generally recognized, and that in so far as this issue is concerned in the instant case, probably "everyone is out of step but John."

The charge of the trial Judge is not a model one, some of his expressions and illustrations being rather ill-advised, but taking the charge as a whole, we think that the juror of ordinary intelligence must have understood that the action was only one for conscious pain and suffering. Indeed, the original verdict of the jury was for "pain and suffering" which clearly indicates that they knew what they were about.

■ There is an additional appeal from the order of the trial Judge settling the "case on appeal."

Although the issue of negligence and willfulness was not raised by the exceptions, the excessiveness of the verdict was before us, and for this reason we cannot say that the trial Judge was in error in ordering all testimony to be printed. Such portion thereof as is not pertinent is negligible.

For the reasons stated, all exceptions are overruled, and the judgment affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.

OXNER, AJ. (concurring).

I think the judgment below should be affirmed for the very satisfactory reasons presented in the opinion of the Chief Justice. I deem it proper, however, to emphasize that the judgment appealed from is not an allowance of $20,-000.00 for compensation on account of conscious pain and suffering by respondents' intestate. The award for such compensation was in the sum of $10,000.00. The remaining portion of the verdict is for punitive damages. In determining whether the action of the trial Judge amounted to a manifest abuse of the discretionary power vested in him, it is proper to consider the nature and purpose of each kind of damages awarded.

Actual or compensatory damages are damages in satisfaction of, or in recompense for, loss or injury sustained. Punitive damages are allowed in the interest of society in the nature of punishment and as a warning and example to deter the wrongdoer and others from committing like offenses in the future. In *Johnson v. Atlantic Coast Line Railroad Co. et al.*, 142 S. C. 125, 140 S. E. 443, 447, the Court said: "Compensatory damages relate mainly to the situation of the injured party. * * * Exemplary damages have relation to the injured party in only one respect, to vindicate his right, recklessly, willfully, maliciously, or wantonly invaded. * * * One of the chief purposes in awarding damages of this class is to punish the wrongdoer, not only to prevent by him a recurrence of the wrongful act, but to deter others from conduct of the same or similar kind. They are not intended for the sole good of the injured party." It was there further stated: "In the assessment of punitive damages, there is no exact monetary standard which can be used as a measure, and in assessment of such damages the main things to be considered are the character of the tort committed, the punishment which should be meted out therefor, and the ability of the wrongdoer to pay. The amounts which should be assessed as punitive damages, therefore, are properly left to the discretion of the jury, subject to the right of the trial judge to approve or disapprove, as has been so often held by this court." This Court has also held that "when under proper allegations a plaintiff proves a willful, wanton, reckless, or malicious violation of his rights, it is not only the right but the duty of the jury to award punitive damages." *Sample v. Gulf Refining Co.*, 183 S. C. 399, 191 S. E. 209, 214.

It is well settled under our decisions that unless the amount of the verdict is "so excessive as to indicate that it was the result of prejudice, caprice or passion, or other considerations not founded on the evidence," the trial Judge alone is vested with power and discretion to set it aside, absolutely or conditionally.

While the awards in the instant case, as to both actual and punitive damages, are indeed large and have given all of us grave concern, I do not feel warranted in concluding that they are "so grossly excessive as to call for the exercise by this Court of its power to grant a new trial on the ground of the excessiveness of the damages awarded." The power, and with it the responsibility, of reducing the verdict by granting a new trial *nisi* rested upon the trial Judge. Although he would have been fully justified in reducing this verdict more than he did, I cannot say that his failure to do so amounted to a manifest abuse of his discretionary power.

The evidence is not at all definite as to the length of time respondents' intestate lived after his injury. The interval can only be roughly approximated. It is alleged in the complaint that he died about thirty minutes after the collision and I think the jury could have reasonably concluded that he did live for that period of time.

FISHBURNE and STUKES, JJ., concur.