17011

WILLIE H. MOCK, as Administrator of the Estate of Hoyt Leroy Mock, Respondent, v. ATLANTIC COAST LINE RAILROAD COMPANY, B. R. TURNER and C. A. NEELY, Appellants

(87 S. E. (2d) 830)

246

*Messrs. Hagood, Rivers & Young,* of Charleston, *for Appellants,*

*Messrs. Meyer, Goldberg & Hollings,* of Charleston, *for Respondent,*

*Messrs. Hagood, Rivers & Young,* of Charleston, *for Appellants, on Reargument,*

*Messrs. Meyer, Goldberg & Hollings* and *J. Louis Lempesis,* of Charleston, *for Respondent, on Reargument,*

June 2, 1955.

BAKER, Chief Justice.

This action for the alleged wrongful death of plaintiff-respondent's intestate, Hoyt Leroy Mock, was commenced in October, 1951. In addition to the defendant-appellant, Atlantic Coast Line Railroad Company, there were four individuals also named as defendants, but during the trial a verdict in favor of two of these individuals was directed, leaving as the individual defendants, who are also appellants, B. R. Turner, the conductor, and C. A. Neely, the engineer, of the train that was in collision with the automobile in which respondent's intestate was riding.

The complaint alleged that on May 25th, 1951, respondent's intestate, a boy of the age of twelve years, was riding in an automobile with his mother, three brothers and a sis-

ter, which came to a stop on the east side of Liberty Hill crossing in Charleston County to permit the Atlantic Coast Line freight train No. 212, northbound, to pass. It is also alleged therein that after the rear of said northbound train had crossed a reasonable distance, the driver of the automobile, after looking in both directions, seeing no other train approaching proceeded slowly to undertake to pass over said crossing, when the Atlantic Coast Line freight train Extra No. 1805, southbound, obscured from her view by the northbound train, without warning and at an excessive rate of speed, ran into said automobile which was then on the southbound track, fatally injuring· plaintiff's intestate. The complaint further charges that all of the defendants-appellants were jointly and concurrently negligent, reckless and willful in numerous specifications of such negligence, recklessness and willfulness, including the violation of the crossing statute.

The answer of the defendants denied all of the material allegations of the complaint and set up the defenses of contributory negligence, recklessness and willfulness of the driver of the automobile involved, and alleged that respondent's intestate and the driver of the automobile in which he was riding, without paying any attention to the southbound train or to its signals, and without taking any precautions, went from a safe place on the east side of the crossing in broad daylight, on a clear afternoon, behind the rear of the northbound train as it cleared the crossing, directly in front of the southbound train, so close in front of the southbound train as to make the collision which ensued the direct and proximate result of the negligence and reckless conduct of the respondent's intestate and of the driver of the. automobile in which he was a passenger.

The answer also set up the defense under Section 8377 of the Code of 1942, that Mrs. Mock, the mother of respondent's intestate, who was driving the automobile, and who was in charge of his person, was guilty of gross and willful negligence in entering upon the southbound track when if

she had again looked to the north before entering upon the said track she would have easily seen the oncoming southbound train; and the further defense that the automobile in which respondent's intestate was riding was the property of Willie H. Mock individually, and was being driven by his wife for a family use or purpose, and that Mrs. Mock was the agent of plaintiff in driving the said automobile for such family use or purpose, and that this action having been brought for the benefit of the said Willie H. Mock and his wife, Thelma Cook Mock, parents of the intestate, the contributory gross and willful negligence of Mrs. Mock as agent for her husband, Willie H. Mock, will bar recovery by respondent for the benefit of the said parents.

Prior to the trial of this case appellants moved to strike certain allegations from the complaint and duly reserved all rights under their motion to strike. The motion was heard by Honorable T. B. Greneker, presiding Judge, who by order dated January 29, 1952, refused practically all of appellants requests to strike, and appellants duly appealed from said order. During the trial of the case the appellants renewed their objections to certain allegations of the complaint noted under the motions to strike by objecting to the admission of certain testimony, and in most instances such testimony was excluded by the trial Judge.

In the trial Judge's charge to the jury, and at the request of appellants' counsel, there was submitted to the jury for their decision in addition to any verdict they might render, the following question: "Did the southbound train, which collided with the automobile, give the statutory signals, by ringing its bell or blowing its whistle, when it approached the Liberty Hill crossing?" The answer to this question by the jury was "No."

Appellants also argued a motion, which had been duly noticed, before Honorable J. B. Pruitt, presiding Judge, for an order requiring respondent to elect as to whether he would rely on the cause of action alleged in the complaint at

common law or would rely on the cause of action alleged in the complaint under the provisions of Sections 8355 and 8377 of the Code of 1942, commonly known as the crossing statutes. This motion was noticed to be heard on February 18, 1952, but whether it was heard on said date becomes immaterial in that Judge Pruitt filed his order March 28, 1952, refusing the motion, from which due notice of intention to appeal was given.

Under the circumstances of this case we do not find it necessary to pass upon whether the plaintiff-respondent should have been required to elect whether he would try his case under the statute law or under the common law. Of course, the main difference ordinarily would be that under the crossing statute the negligence and recklessness and willfulness of the driver of the vehicle would be imputable to a passenger in the vehicle, whereas under the common law it would not be imputable. However, this case has been brought for the benefit of the mother and father of the respondent's intestate. The automobile in which respondent's intestate was riding was owned by his father and driven by his mother, and at the time of the collision the said automobile was apparently being used at least partially for a family use or purpose, and if the jury had found that she was guilty of gross and willful negligence, the parties for whose benefit this action was brought could not have recovered. Therefore, it makes no difference that under the common law the negligence of the driver of a car is not imputable to a passenger when the driver and passenger are engaged in a common enterprise, or the passenger has authority to direct the control of the car.

While we are close to this subject it would be more logical to now, rather than later, take up appellants' Exceptions 9 and 12, and we quote from the record:

"9. That the Court erred in submitting the issue of the family purpose to the jury when the undisputed testimony was that the automobile was being used for a family purpose.

\* \* \*

"12. That the Court erred in refusing to charge the following language as requested in Defendants' Request to Charge No. 10:

" 'I charge you that a wife who drives an automobile which is the property of her husband, and uses the automobile to transport their children, is using the automobile for a family use or purpose and that the wife is the agent of her husband in driving the automobile.

" 'I further charge you that if the driver of the automobile at the time of the collision was guilty of contributory negligence, recklessness or willfulness that proximately caused the collision, that both the mother as the driver of the automobile and the father as the owner of the automobile will be barred from recovery, and it will be your duty to find a verdict for the Defendants.'

"And in charging the following language:

" '(To the jury:) I charge you that, if a wife drives an automobile, which is the property of her husband, and uses the automobile to transport their children, in using the automobile for a family use or purpose and that the wife is the agent of her husband in driving the automobile.

" 'In other words, Mr. Foreman and gentlemen of the jury, when a man, head of a family, has an automobile for the general use of the family, for his wife and children, and a member of that family, a wife or a child, using that automobile, is the agent of the owner or the head of the family. Does that cover it?

" 'Mr. Rivers: "Yes, sir." '

"When the only reasonable inference to be drawn from the testimony is that the driver of the automobile was driving for a family use or purpose and was the agent of the Plaintiff, Willie H. Mock, in driving the said automobile."

The record discloses that Mrs. Mock was using the car for a family purpose to an extent, but it also appears from the record that at the time the car she was driving was in collision with the train she was "deliver-

ing Stanley Products, Easy Cleaner and a bottle of shampoo to Mrs. Frances Barrs and Mrs. Dorothy Buck." The record does not disclose for whose benefit she was delivering these products, and, therefore, in the light of this testimony it cannot be said that the trial Judge erred in leaving it to the jury to decide whether at that time she was acting as the agent of her husband rather than charging the jury as a matter of law that she was at such time his agent. However, the verdict of the jury sets at rest the ultimate issue since the jury found that Mrs. Mock, the driver of the automobile, was not grossly and willfully negligent in its operation.

As shown hereinabove in quoting from the record, counsel for appellant agreed that the charge of the trial Judge to the jury covered their No. 10 Request to Charge.

If it be conceded, without so deciding, that Mrs. Thelma C. Mock, the driver of the automobile, was the agent of her husband, Willie C. Mock, and was negligent in the operation of the automobile, which negligence contributed as a proximate cause to the death of respondent's intestate, even then such negligence would not bar a recovery either under the statute or the common law if the train was operated in a grossly negligent, reckless and willful manner. In order to bar a recovery, the driver would have had to operate the automobile in a grossly negligent, reckless and willful manner, which contributed as a proximate cause to respondent's intestate's death, or was the sole cause.

Under the crossing statute, Section 8377, Code of 1942, if the railroad corporation neglected to give the required warning signal of the approach of its train, and such neglect contributed to the damages resulting from an ensuing collision, the railroad is made liable for damages resulting therefrom, unless it can be shown that the person injured, or the person having charge of his person or property was at the time of the collision guilty of gross or willful negligence or was acting in violation of the law, and that such gross, willful negligence or unlawful act contributed to the injury. Depending upon the particular circumstances, as the jury was

warranted in finding in this case, the failure to give appropriate signal or warning of the approach of the southbound train to the Liberty Hill crossing, and the speed at which said train was being operated as testified to by respondent's witnesses, when the appellants knew or should have known that this was a heavily traveled crossing, unprotected by flash lights or a flagman or watchman, constituted gross, reckless and willful negligence.

As we view the record in this case, the two main issues to be decided are: (1) Whether the only reasonable inference to be drawn from the testimony is that the driver of the automobile in which respondent's intestate was a passenger was guilty of gross negligence, recklessness and willfulness in driving upon the southbound track at the time and under the circumstances then existing; and (2) Whether the verdict is so excessive as to evidence that it was the result of caprice, passion and prejudice. We will discuss these issues in the above order.

Under the testimony in this case, it was necessary for the trial Judge to submit to the jury the issue of whether the appellants were guilty of gross negligence, recklessness and willfulness in the operation of its southbound train at the time and place of its collision with the automobile in which respondent's intestate was riding. This question having been answered by the jury in the affirmative, in order to defeat a recovery it was necessary for the appellants to prove by the preponderance of the testimony that the driver of the automobile was also guilty of gross negligence, willfulness and wantonness, which contributed as a proximate cause to the death of respondent's intestate. For so doing the appellants could rely upon all of the testimony in the case, irrespective of its source. And if the only inference to be drawn therefrom was that the driver of the automobile was guilty of gross negligence and willfulness in the operation of the automobile, and such contributed to the collision and the result thereof as a proximate cause, it would have been his duty to have granted the motion of the appellants for a direction

of verdict in their favor. Of course, under the facts of this case, if the driver of the automobile involved in the collision was guilty of such degree of negligence as to amount to recklessness and willfulness as a matter of law, it follows in this case that it contributed as a proximate cause, and the trial Judge should have granted the motion for a direction of verdict for the appellants. Therefore, we come back to Question 1 as first stated.

One of the most recent cases decided by this Court ▌ involving the issue now under discussion is *Gillespie v. Ford*, 225 S. C. 104, 111, 81 S. E. (2d) 44, 47. While the writer, at the time the opinions in that case were filed, disagreed, and still does disagree as to the result, he has no quarrel with so much of the rules of law stated therein as is hereinafter quoted. In fact, such is the well established rules of law in this State. We quote:

"* * * It is axiomatic that in considering such a motion the evidence, and all reasonable inferences therefrom, should be considered most favorably to the plaintiff. Ordinarily, it is the function of the jury to pass upon the issues of negligence, wilfulness and wantonness * * *; contributory negligence is an affirmative defense and the defendant who pleads it has the burden of establishing it by the preponderance of the evidence. It rarely becomes a question of law for the court."

The driver of the automobile which was in collision with the train testified to the effect that as she approached the Liberty Hill crossing she observed a northbound freight train in motion about 200 feet down the track, and that she thereupon stopped the automobile and waited for the train to pass; that she was stopped there "a good while," and about 25 or 30 feet to the east of the northbound track; that this freight train was 75 or 100 cars long; that the weather was fair, the car windows were down, and while it was equipped with a radio, it was off; that after the northbound train cleared the crossing and the caboose had passed the signal light and was an estimated 100 yards north of the

crossing, being familiar with this crossing and knowing there were two tracks, she looked for trains in both directions, and seeing none, and hearing no signals such as the blowing of the whistles and the ringing of a bell, she started the car across the crossing in low gear, and did not see the southbound train, nor was she aware of it until she had driven on the southbound track, and then said train was just before colliding with the car she was driving; that there was nothing there to give a traveler any notice that a southbound train was approaching on the southbound track; that there was no impairment of her hearing; that when she looked to the north she saw no evidence of smoke from the engine of a train nor any evidence of a train approaching from that direction. It is argued that it was testified by Mrs. Mock that the automobile when hit by the engine was still being driven in low gear, but she answered "no" to two questions asked her in one, and this answer could just as well be applied to either. This, however, is immaterial.

In the light of the testimony of Mrs. Mock, we cannot say as a matter of law that at the time of the collision she was operating or driving the automobile in which respondent's intestate was a passenger in a grossly negligent, reckless and willful manner. Copy-modeling from the opinion of this Court in *Harrison v. Atlantic Coast Line R. Co.,* 196 S. C. 259, 266, 13 S. E. (2d) 137, the question now being discussed is not whether the driver of the automobile exercised ordinary care, but whether she failed to exercise slight care, and hence was guilty of gross negligence, willfulness, and recklessness contributing as a proximate cause to the death of respondent's intestate. Of course, as is usual in cases of this kind, the testimony of Mrs. Mock was contradicted as to various phases, more especially as to the distance the caboose on the northbound train was from the crossing at the time she proceeded to drive upon and over the crossing, all of which entered into whether she was guilty of recklessness and willfulness, and which created an issue to be decided by the jury under applicable principles

of law to be charged by the trial Judge. There is no exception to the trial Judge's charge on this issue.

We now come to the second main question stated above as to *whether the verdict is so excessive as to evidence that it was the result of caprice, passion and prejudice.*

While this question was not argued at length in appellant's first brief, it is squarely raised by an exception, was specifically raised in the oral statement of the grounds of motion for a new trial, and was one of the written grounds of the motion for a new trial; and upon reargument of this case, appellant's attorneys filed additional brief covering this issue, and orally argued it before this Court.

The testimony is that the deceased was a lad twelve years old, healthy, of good habits, of sound mind and ability, a fifth grade student, and one of five children of Mr. and Mrs. Willie H. Mock. It does not appear that he had any earning capacity or that he had ever done work for financial gain. It will be assumed that he was held in loving esteem by his parents and that they experienced the natural feelings of grief in the loss of a loving son. It cannot, however, be assumed that they suffered any pecuniary loss in his passing. The elements of damage in such a case are such mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship and deprivation of the use and comfort of intestate's society as the beneficiaries may have sustained as the result of the death of the intestate.

The attorneys for the appellant no doubt were less vigorous in presenting argument on this point prior to the reargument of the case than otherwise they would have been on account of a number of large verdicts which this Court has allowed to stand. We have in mind especially the verdict in the case of *Bowers v. Charleston & W. C. Ry. Co.,* 210 S. C. 367, 42 S. E. (2d) 705, 707, wherein this Court sustained a verdict of $10,000.00 as damages for pain and suffering endured by a minor for conscious pain and suffering for a comparatively short period of time, and $10,000.00

punitive damages, to which amount the verdict for $15,000-.00 punitive damages had been reduced. It was stated in that opinion that the large amount of the verdict, especially considering the short space of time which the deceased survived the injury, had given the Court great concern. The growing tendency of juries to render such verdicts has given the Court further grave concern. We also said in that opinion that, while the responsibility of dealing with the matter of excessive verdicts rests primarily upon the courts below, "yet it has been recognized for at least one hundred and twenty-five years, that this Court is not powerless." The Court further held:

"The power and duty of the Supreme Court to reverse a judgment entered upon a jury verdict where the record clearly discloses that the amount of the verdict is unconscionably high, and has no relation to any reasonable measure of damages for the injury inflicted, has been rarely exercised, but nonetheless exists and when, as in this case, the exercise of the power is invoked, it is the duty of the Court to examine the record in the light above stated.

"This power is analogous to that of a trial judge, to the extent that in either Court a judgment based on a verdict of the character above indicated will be set aside by the granting of a new trial. The difference between the powers of the two Courts is that in the case of the Circuit Court, the error of the jury in rendering an unreasonable verdict can be cured either by granting a new trial absolute, or by granting a new trial *nisi,* whereas in the case of the Supreme Court there is no power to grant a new trial *nisi.* The relief that can be afforded here is the granting or the refusal of a new trial."

The writer of that opinion expressed his opinion of the verdict in that case, and of the duty of the Court in regard to it, as follows:

"In one class of cases the verdict may be deemed excessive, and yet the case may be such as to indicate merely undue liberality on the part of the jury. To reduce the verdict

in such a case to proper proportions by the granting of a new trial *nisi* works substantial justice to both parties to the litigation, and promotes the general policy of the courts to bring litigation to an end without unnecessary repetitious trials. In such cases the verdict is not inherently vicious, in the sense that it indicates that the jury was moved by passion or prejudice, rather than by a due regard for the facts of the case and the instructions of the Court. The vice in such a verdict is merely that, in the view of the Court, it is not in accord with accepted judicial standards for measuring damages under the facts of the particular case. As aforestated, it is in this class of.cases that the Circuit Court may in its discretion grant a new trial *nisi*. Where it has refused to do so, this Court will not usually interfere, the matter being one within the sound discretion of the Circuit Court.

"In the other class of cases the verdict is so grossly excessive as to be deemed to be the result of a disregard of the facts and of the instructions of the Court, and to be due to passion and prejudice rather than reason. Where this is found to be the case, it is the verdict itself, rather than merely the amount of the verdict, which is inherently vicious, and the verdict should not be permitted to stand whether the question arises in the Circuit Court or in this Court."

Attention is invited to the case of *Vernon v. Atlantic Coast Line R. Co.,* 221 S. C. 376, 70 S. E. (2d) 862.

It would not serve a useful purpose to review other cases that have been decided in which the question has been considered. The writer is now constrained to hold that a verdict of the amount involved in this case ($50,000.00 actual damages, and $15,000.00 punitive damages) for the death of a young child is so disproportionate to the measurable damages as to evidence caprice, passion and prejudice on the part of the jury, and to call for the granting of a new trial, and to amount to an abuse of discretion by the Circuit Judge in failing to grant a new trial.

We have not been able to review all the cases decided by appellate courts of other states, but we have reviewed two

annotations found in 48 A. L. R., page 837 *et seq.,* and 14 A. L. R. (2d) page 550 *et seq.* We find that the majority of the verdicts dealt with in the cases reviewed in these annotations were $10,000.00 or less, and a few in excess of that amount. In some of the states in which these verdicts were rendered, the measure of damages was limited to pecuniary loss, which is not the rule in this state, but in others the elements of damages seem to have been practically the same as in this state. It is a matter of interest that no verdict of as much as $50,000.00 seems to have been found by the person preparing the annotations.

The writer does not feel that he can escape his responsibility of exercising the acknowledged power of this Court of intervening when it is abundantly clear that the excessively large amount of the verdict in this case can be explained only by the caprice, passion and prejudice of the jury. The Circuit Judge who tried this case does not feel that this element could have entered into the decision of the jury, but I cannot concur in this view of the matter. The verdict is, in my opinion, wholly disproportionate to the measurable damages sustained, and it is the duty of this Court to set it aside.

However, the majority of the Court are of opinion that this Court cannot say as a matter of law that the trial Judge committed an abuse of discretion by failing to reduce the verdict as rendered by the jury by granting a new trial *nisi,* or a new trial outright, and therefore what the writer said in the *Bowers case* and has said above in reference to excessive verdicts, and what was said in the dissenting opinion of Mr. Justice Fishburne, and concurred in by the writer hereof, in the case of *Jennings v. McCowan,* 215 S. C. 404, 55 S. E. (2d) 522, again goes for naught.

In the trial of the case, and while Mr. W. E. Witherspoon, a witness for appellants, was being cross-examined, he was asked the question: "You knew a great many people had been killed at that crossing previously—" At that point counsel for appellants objected on the ground that it was entirely improper, and moved for a

mistrial. The trial Judge refused the motion, but instructed the jury to disregard the question. Thereupon, counsel for respondent withdrew the question, but of course in so doing was in nowise acting voluntarily. The objection and motion stemmed from the fact that in the original complaint which contained in connection with other allegations regarding this alleged dangerous crossing, the words "when the multitude and frequency of collisions at said crossing" had, on motion, been stricken therefrom. From the above fact it is the position of appellants that the asking of this question was not an inadvertence.

In *Gordon v. Rothberg,* 213 S. C. 492, 50 S. E. (2d) 202, 207, we find the following:

"Counsel for appellants very properly and correctly concede that under the general rule the granting of a motion for a mistrial by reason of anything occurring during the trial of a case is within the sound discretion of the trial Judge, and his ruling thereabout will not be disturbed unless there has been an abuse of this discretion. 'Abuse of discretion' is a legal term to indicate that the appellate court is simply [of] the opinion that there was error of law in the circumstances."

We find no "abuse of discretion" in the refusal of the trial Judge to declare a mistrial.

The second motion for a mistrial, arising as it did, in our opinion, has no merit, especially as to prejudicing any juror against the appellants, and most assuredly not as against the respondent, as witness the verdict.

The last issue raised by the appellants, and not hereinabove passed upon, appears to be whether the Court erred in refusing to strike alleged inflammatory and irrelevant allegations from the complaint.

The printed brief of appellants is so lacking in specificity on this issue, notwithstanding the numerous exceptions thereabout, until we do not feel that it is incumbent on this Court to undertake to separate the various portions sought to be stricken from the complaint, there being ninety-six of such.

Some three or four allegations in the complaint were ordered stricken in part, but the whole ninety-six are involved in the abovestated issue.

However, the appellants do argue in their brief that they sought to strike from the complaint the inflammatory and irrelevant allegations therein so that such allegations would not be read to the jury when the pleadings were published; and that even though such testimony as was offered to establish same was held to be inadmissible by the trial Judge, yet the reading of the complaint containing such allegations to the jury was highly prejudicial, and especially when the jury was given the complaint to take in jury room with them when deliberating on the case.

When the Circuit Judge (Honorable T. B. Greneker) passed his order on the motion to strike, after hearing argument thereabout, his concluding remarks were as follows:

"It must be remembered that in considering so great a number of Motions as made by the defendant, a Judge is at a great disadvantage in trying to reach a proper conclusion because he does not have the advantage of the testimony which, of course, would greatly aid him in making a proper determination.

"However, as said by our Supreme Court in the case of *Charles v. Texas Co.*, 192 S. C. [82,] at page 82 [5 S. E. (2d) 464]:

" 'All of the matters referred to in the Motion to Strike (* * *) will come under the purview of the Judge trying the case and he at that time can determine the competency and the relevancy of the evidence and whether the legal and probative effect of the same is sufficient to submit the cause to the jury, but those matters can be better disposed of at the trial of the case'."

It is unfortunate that cases in courts cannot always be 100% free of matters in connection therewith which may be prejudicial, but the rules and law governing same are man-made, and therefore perfection therein

is unobtainable. It occurs to us that any prejudice, if any, by reason of the alleged inflammatory and irrelevant statements in the complaint could have been largely cured if appellants' counsel had requested the trial Judge to charge the jury that unless there was testimony admitted in evidence as to these allegations, then they should wholly disregard same. For instance, it was alleged in the complaint that prior to the time of the accident here involved, the appellant railroad was put on notice by public and civic bodies of the community that the crossing was a particularly dangerous one and required additional protection; and further alleged as a specification of negligence that the appellant railroad operated its trains at the crossing in disregard for the safety of the traveling public despite the complaints of public and civic bodies. The motiôn to strike these allegations from the complaint was refused, but no testimony in support of such allegations was offered upon the trial, and so the gravamen of appellants' objection here is that the reading of the complaint to the jury containing these allegations necessarily prejudiced the jury against them. In the case of *Bagwell v. McLellan Stores Co.*, 216 S. C. 207, 57 S. E. (2d) 257, 261, where the Court in considering the admissibility of testimony to the effect that the assistant manager of the defendant at the time of the accident had stated that he had slipped on the floor several times himself, it is stated: "While it is *generally agreed that such testimony is relevant upon the question of notice or knowledge* of the condition of the floor, there is quite a diversity of opinion as to whether it is admissible to show negligence." While this authority relates to the admissibility of evidence of notice of danger rather than to the propriety of allegations of such notice in the pleadings, it necessarily follows that what may be proven may be pleaded, and therefore it is doubtful whether appellants can complain of such allegation.

What we have just said relates to the first exception to the admission of testimony.

The second objection reported was directed to offers by counsel for respondents to introduce evidence on the habitual operation of trains by the appellants at high speeds at the crossing. Such evidence was probably relevant on the issue of willfulness under the case of *Miller v. Atlantic Coast Line R. Co.*, 140 S. C. 123, 138 S. E. 675, and *Jennings v. Northwestern R. Co. of South Carolina*, 138 S. C. 385, 136 S. E. 639. This evidence was excluded by the trial Judge, and appellants should not be heard to complain thereabout.

Having passed on all issues argued, and a majority of the Court being of the opinion that all exceptions should be overruled, the judgment appealed from. is affirmed.

STUKES, J., concurs.

TAYLOR, OXNER and LEGGE, JJ., concur in result.

LEGGE, Justice, concurring in result.

The verdict in this case was a very large one, but in my opinion not so excessive as to require the conclusion that the learned circuit judge was guilty of abuse of discretion in not for that reason granting a new trial. The unquestioned power of this court thus to strike down the judgment of the lower court has been, and should continue to be exercised only in those rare instances in which the amount of the verdict is so shockingly excessive as manifestly to show that the jury was actuated by passion, partiality, prejudice or corruption. Proper application of this power is always difficult, because, as was pointed out in *Haselden v. Atlantic Coast Line R. Co.*, 214 S. C. 410, 53 S. E. (2d) 60, there is no fixed standard by which the court may ascertain and characterize the excessiveness. In that case it was urged that a verdict in the amount of $45,000.00 for permanent disability of plaintiff's left foot was so excessive as to show caprice, passion and prejudice; but this court found no abuse of discretion on the part of the trial judge in refusing to grant a new trial on that ground. In the *Haselden case*, loss of earning capacity was a tangible

element in the measure of damages. In *Bowers v. Charleston & W. C. Ry. Co.,* 210 S. C. 367, 42 S. E. (2d) 705, an action for damages for pain suffered by a ten-year-old boy during the period of twenty minutes that elapsed between his injury and death, a verdict of $10,000.00 actual and $10,000.00 punitive damages was sustained by a unanimous court.

In *Miller v. Atlantic Coast Line R. Co.,* 140 S. C. 123, 138 S. E. 675, 677, an action for the death of "a young man of high character with excellent prospects for the future," the published record does not indicate the earnings of the deceased at the time of the accident. There, the father being the sole beneficiary of the cause of action, a verdict of $25,-000.00 actual damages against each of the two corporate defendants was upheld. One of the justices dissented, but on other grounds.

In *Hicklin v. Jeff Hunt Machinery Co.,* S. C., 85 S. E. (2d) 739, where a verdict for $30,000.00 actual damages was rendered for the wrongful death of a four-year-old child, its amount was not questioned on appeal.

Determination of the propriety of the exercise by this court of its power before mentioned is rendered difficult in an inflated economy, as was pointed out in the *Haselden case.* It is inherently difficult where, as in the case at bar, there is no tangible factor of damage, such as earning capacity, and the standard of recovery must be measured only by such imponderables as mental anguish, grief and loss of companionship. And its difficulty is emphasized in cases where the evidence has warranted a verdict, in addition to actual, of damages which, though denominated punitive, became part of the plaintiff's recovery and are thus in fact compensatory. Nor is the problem solved by our arriving at a figure, less than the amount of the verdict, which in our judgment represents the fair measure of recovery, for it is not within our province to substitute that figure for the one found by the jury. That power resides

alone in the trial court, as we have repeatedly said, and it would be beside the point to say in the instant case that in our opinion the learned trial judge would have been justified in granting a new trial *nisi*. We can only affirm the verdict as approved by the lower court, or strike it down *in toto*. To do the latter we must not only determine for ourselves from the record what part of the amount of the verdict represents, so far as may be expressed in terms of money, the fair measure of the combined elements of plaintiff's damage, but we must also be convinced that the excess over that figure is the result not of mere undue liberality on the part of the jury, but of passion, partiality, prejudice or corruption. I find myself unable to reach that conclusion in the instant case.

TAYLOR and OXNER, JJ., concur.