15305

LANGSTON v. ATLANTIC COAST LINE R. CO. *ET AL.*

(15 S. E. (2d), 758)

October, 1940.

*Mr. Douglas McKay,* of Columbia, and *Messrs. Felder & Rosen,* of Orangeburg, for appellants,

*Mr. Andrew J. Hydrick* and *Messrs. Zeigler & Brailsford,* of Orangeburg, for respondent,

July 20, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

The appeal involves issues growing out of a railroad crossing accident just outside the limits of the City of Orangeburg, which resulted in the death of plaintiff's intestate, Claude Edward Langston, who at the time of the accident was riding upon a motorcycle. The action was defended upon the ground that the deceased was guilty of gross and willful negligence in approaching and entering upon the crossing, which negligence contributed as a proximate cause to the fatal accident. The trial resulted in a verdict for the plaintiff, and the defendants appeal upon the ground that the Court erred in overruling motions for nonsuit and for directed verdict on account of Langston's gross, contributory negligence, recklessness, willfulness and wantonness. This constitutes the sole question for determination by this Court.

The complaint contains specifications of negligence and willfulness, including failure on the part of the train crew to keep a reasonable lookout for travelers upon the highway; operating the train at a high and reckless rate of speed under the circumstances; failure to give the statutory sig-

nals; and in erecting, causing to be erected, or permitting to be erected buildings and structures on the right-of-way, both to the east and to the west of the crossing, in such close proximity to the railway line and to the intersection of the same with Whitman Street as to unreasonably obstruct the view of persons using the highway and crossing of a train traveling in either direction.

On October 26, 1939, about 7:30 in the morning, Langston, a young man about twenty-three years of age, left his home on a motorcycle with the intention of going to the Carolina Packing Company's plant, where he was an employee. The course he pursued lay along Whitman Street, and across the tracks of the defendant railroad company. At the crossing in question the railroad track runs northeast and southwest, and Whitman Street runs east and west, crossing the tracks at a sharp angle.

In accordance with the settled rule of this Court where the appeal is from the refusal to grant a nonsuit or a directed verdict, we adopt the view of the evidence most favorable to the verdict, and give it the strongest probative force of which it will admit.

The testimony shows that the deceased approached the crossing at an estimated speed of twenty miles an hour. He was experienced in the operation of a motorcycle, being regarded as a careful and expert driver. The motorcycle was in first-class mechanical condition, being equipped with new tires, standard muffler, and with the brakes in good working order. The evidence indicates that it had rained lightly some time before daylight, and the asphalt paving was, therefore, slightly damp. It was shown that under ordinary conditions a motorcycle such as decedent's, traveling at a speed of thirty miles an hour, could be stopped within ten feet by applying the brakes, and within a shorter distance by throwing it down.

Certain buildings and structures on the railroad right-of-way, to Langston's left as he approached the crossing, either partially or completely obstructed his view of the train com-

ing from that direction. Several maps showing the physical surroundings at the crossing were introduced in evidence, and at the conclusion of all the evidence the jury were taken to the crossing and viewed the entire scene. There was un-contradicted testimony that a full view of the approaching train, because of the obstructions, was impossible until Mr. Langston on his motorcycle reached a point on Whitman Street about fifty feet from the main line track.

The railroad right-of-way at the crossing is 130 feet wide, that is, 65 feet from the center of the track on each side. On this 65-foot area on the western side of the track, from which direction Langston was approaching, are the several obstructions referred to. First a brick garage, 30 x 32 feet in size, used by the Gulf Oil Corporation, and located about 120 feet from the crossing. This was enclosed by a sub-stantial wire fence which projected on the side toward the track several feet beyond the brick garage, and came within thirty-three feet or less of the railroad track. About forty feet to the left of the brick garage was a one-story galva-nized iron supply house, considerably larger than the garage. About fifty feet to the left of this supply house were five large oil tanks of the Gulf Oil Corporation. Continuing to the left was a smaller building and three oil tanks of the Sinclair Refining Company.

It is reasonably inferable that at the angle which Lang-ston approached the crossing these obstructions prevented an extended view of the track to his left until he had reached a point 35 or 40 feet from the crossing.

It is clearly evident that these structures likewise consti-tuted an obstruction to the view of the engineer, although, at his post in the cab of the engine he occupied a much higher elevation than that of Langston on his motorcycle. The en-gineer testified that as he approached the crossing he kept a careful lookout, but did not see Langston until the latter got to within 25 to 40 feet of the track. And when he was asked, "What was there to obstruct your view of him?" he replied, "He had not gotten where I could see him." Langston ap-

plied his brakes at a point thirty feet from the main line track, so that it might reasonably be inferred that Langston's first view of the train and the engineer's first view of Langston were contemporaneous. From that point on the motorcycle wheels were locked, leaving a skid trail. As Langston reached a spot just short of the crossing, and when the motorcycle had almost come to a standstill, he jerked it to the left. He nevertheless fell against the front of the engine and his body was carried some seventy or eighty feet beyond the crossing. As the result of the injuries he sustained he died within an hour.

There is testimony that at a point on Whitman Street about fifty feet from the crossing, Langston looked to the left, then to the right, and again to the left. It can reasonably be inferred that he discovered the oncoming train when he looked to the left the second time, when he was about thirty feet from the crossing. The evidence also shows permanent obstructions on the right-of-way on the right-hand side of this crossing. And, although contradicted, there is evidence that the train, which was an extra freight train, did not give the statutory signals by blowing the whistle or ringing the bell.

The train was composed of the engine, the cab, and twenty-nine cars, was traveling at a rate of speed from 35 to 40 miles per hour, and was brought to a stop when the engine was about 2,000 feet from the crossing.

In our opinion, the defendants' motions for nonsuit and directed verdict, made on the ground that the evidence shows as a matter of law gross and willful contributory negligence on the part of the deceased, were properly denied. We are satisfied that the evidence made an issue for the jury.

This case is controlled by *Harrison v. Atlantic Coast Line R. Co.,* 196 S. C., 259, 13 S. E. (2d), 137; *Cook v. Atlantic Coast Line R. Co.,* 196 S. C., 230, 13 S. E. (2d), 1, 133 A. L. R., 1144; *Carter v. Atlantic Coast Line R. Co.,* 194

S. C., 494, 10 S. E. (2d), 17. And see the many other cases cited in these decisions.

Under ordinary circumstances a traveler approaching ■ a railroad crossing who has full opportunity of seeing the approaching train in time to avoid a collision, and who does not look or exercise the slightest care for his safety, the testimony being susceptible of no other reasonable inference, is guilty of gross negligence, and the Court may so declare as a matter of law.

Our review of the evidence shows that the deceased was not entirely heedless, and it is reasonably inferable that he looked both ways for approaching trains at the first point -on the highway where his vision was not obstructed, either completely or partially, by buildings erected on the right-of-way by the railroad company.

We said in *Harrison v. Atlantic Coast Line R. Co., supra* (196 S. C., 259, 13 S. E. [2d], 141) : "In determining whether or not a traveler crossing a railroad at a highway crossing is guilty of contributory negligence, so as to bar recovery by him for an injury received by being struck by a train at such crossing, the jury must consider all of the facts and circumstances shown in the case, including the speed of the train, the fact that such train did or did not give the usual crossing signal, the distance at which an approaching train could be observed by one going upon the crossing, the care exercised by such injured party before entering thereon, the presence or absence of obstructions, and if from all of these facts it appears that the injured party has taken such precautions as would have been taken by one of ordinary prudence under the circumstances, he will not be held guilty of contributory negligence."

And further, in the same case, adverting to the rule established in this State we said: "If the inferences properly deducible from the evidence are doubtful, or if they tend to show both parties guilty of negligence or willfulness, and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proxi-

mate cause, then the question must be submitted to the jury. *Ford v. Atlantic Coast Line Railroad Co.,* 169 S. C., 41, 168 S. E., 143."

In both the *Harrison* and the *Cook cases* we pointed out that a traveler approaching a railroad crossing has a right to presume that the defendants will obey the law and give the statutory signals upon approaching the crossing; that while the wrongful conduct of the defendant in this regard will not excuse the traveler from the exercise of slight care, yet in determining whether he did use such care, his conduct is to be judged in the light of such presumption.

In *Pokora v. Wabash R. Co.,* 292 U. S., 98, 54 S. Ct., 580, 581, 78 L. Ed., 1149, 91 A. L. R., 1049, Mr. Justice Cardozo, delivering the unanimous opinion of the Court, said: "The burden of proof was on the defendant to make out the defense of contributory negligence. *Miller v. Union Pac. R. Co.,* 290 U. S., 227, 232, 54 S. Ct., 172, 78 L. Ed., 285. The record does not show in any conclusive way that the train was visible to Pokora while there was still time to stop. * * * In such circumstances the question, we think, was for the jury whether reasonable caution forbade his going forward in reliance on the sense of hearing, unaided by that of sight. No doubt it was his duty to look along the track from his seat, if looking would avail to warn him of the danger. This does not mean, however, that if vision was cut off by obstacles, there was negligence in going on, any more than there would have been in trusting to his ears if vision had been cut off by the darkness of the night. *Cf. Norfolk & W. R. Co. v. Holbrook* [6 Cir.], 27 F. (2d), 326. Pokora made his crossing in the daytime, but like the traveler by night he used the faculties available to one in his position. *Johnson v. Seaboard Air Line R. Co.,* 163 N. C., 431, 79 S. E., 690, Ann. Cas., 1915-B, 598; *Parsons v. Syracuse, B. & N. Y. R. Co.,* 205 N. Y., 226, 228, 98 N. E., 331. A jury, but not the court, might say that with faculties thus limited he should have found some

other means of assuring himself of safety before venturing to cross."

To the same effect is *Carter v. Atlantic Coast Line R. Co.,* 194 S. C., 494, 10 S. E. (2d), 17.

The evidence must point to the gross contributory negligence of the plaintiff's decedent with that clearness and singleness of inference which must obtain in order to justify the Court in taking the case from the jury. Under the facts in this case we cannot say with judicial certainty that plaintiff's intestate failed to exercise slight care for his own safety, and under the applicable rules of law we think the lower Court committed no error in overruling the motions for nonsuit and for a directed verdict. The inferences arising from the evidence required that the case be submitted to the jury.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES CARTER, BAKER and STUKES concur.