15850

GLEATON v. SOUTHERN RY. CO. ET AL.

(38 S. E. (2d), 710)

508

*Messrs. Adam H. Moss and James A. Moss,* of Orangeburg, and *Frank G. Tompkins,* of Columbia, for appellant,

*Messrs. T. B. Bryant, Jr.,* and *A. J. Hydrick,* both of Orangeburg, for Respondent,

*Messrs. Adam H. Moss* and *James A. Moss,* of Orangeburg, and *Frank G. Tompkins,* of Columbia, for appellant,

June 13, 1946.

Mr. Associate Justice Stukes delivered the unanimous Opinion of the Court.

Mike Gleaton, an active and substantial business man and farmer of Springfield, was traveling very slowly, about five miles an hour, eastward in his automobile on Orangeburg Street of the town at about ten o'clock on the morning of December 20th, 1944, when he was struck by a locomotive of appellant at the grade crossing of its lines of railway just north of the passenger and freight station. There are three tracks, the first as decedent approached was the "house" or sidetrack, then the main track on which the locomotive was moving, and finally the passing track. Attached to the locomotive was only one coach and it was returning as an "extra" from Jacksonville where it had delivered a troop train, and did not stop at Springfield.

The decedent was alone in his automobile, had stopped at the postoffice, reversed from his parking position and started over the crossing when no scheduled train was due. He was seen by numerous disinterested witnesses, who testified in about equal division as to whether the statutory crossing signals were given. All agreed, however, that Mr. Gleaton slowed down almost, if not quite, to a stop a few feet from the crossing (which tends to negative gross negligence), and then proceeded over the house track and finally on the main line where his car was struck as it was swerved to the left in an apparent last effort to escape. The pilot or cowcatcher of the locomotive went under the running board of the automobile which was thereby suspended and carried for a distance of 296 feet before the locomotive was stopped, the automobile extricated and the injured driver removed. He was given first aid by a local physician and sent to a hospital where he died about a week later.

The suit is under Lord Campbell's Act, sections 411 and 412 of the Code of 1942, by his son, the executor of his

will. Besides allegations of the failure to give the crossing signals required by statute, the complaint specified as alleged acts of wilful, wanton, and reckless negligence (a) excessive speed of the train in violation of the state law and municipal ordinance, (b) failure of the crew to keep a reasonable lookout, (c) lack of a flagman at the crossing, (d) placing a boxcar on the sidetrack near the station in position to obstruct decedent's view and (e) defective and inadequate brakes on the locomotive.

The action for $40,000.00 damages was against the appellant and the engineer in charge of its locomotive, the defendant Moore, and the verdict of $5,000.00 actual damages was against the company alone. The trial court refused timely motions for nonsuit and directed verdict and after the latter against it, appellant moved for judgment *non obstante veredicto*. The appeal is only from the refusal of the last-mentioned motion.

The nature of such a motion in our practice is defined in rule 79 of the Rules of the Circuit Court which was promulgated in 1942. It is only appropriate when a motion was formerly made by the movant for direction of verdict in his favor, which first motion was not granted when made. There is no magic in the motion and it is merely revival after adverse verdict of a timely motion made before for contrary direction of the verdict. Thus the refusal of the motion in this case and the appeal therefrom brings up for review only the action of the trial court upon the appellant's motion for directed verdict made at the close of all of the evidence. It is the same as if the appeal were from the original refusal to direct the verdict in favor of the movant, the appellant.

Much of its able argument is bottomed upon the premise that the jury's favorable verdict for the engineer-defendant absolved the appellant from liability for the alleged negligent and reckless acts and omissions of it which were most, if not all, the acts of the engineer, and the latter was found innocent by the jury. *Carter v. A. C. L. R. Co.,* 194 S. C., 494, 10 S. E. (2d), 17. But appellant is plainly not in posi-

tion to claim any advantage from the verdict of acquittal of the engineer for it made no point of it in the trial court. The motion for judgment *non obstante veredicto* afforded appellant no remedy on that account.

The motion for judgment notwithstanding the verdict (to the refusal of which the appeal solely relates) was properly made upon the grounds stated for the previous motion for directed verdict, proper in view of the contents of the applicable rule to which we have referred. We repeat that no point was made at all in the circuit court of the fact that the jury had found in favor of the engineer and only against the company, the appellant here.

We recur then to the grounds of the motion which appellant made for a directed verdict in its favor at the close of the evidence. The first relates to punitive damages, not now an issue for the verdict was only for actual damages and, incidentally, was for a very modest amount for the wrongful death of a substantial man of family. The second and third grounds are to the effect that there was no evidence of actionable negligence of the defendants; the fourth that the evidence supported no reasonable inference other than that negligence and wilfulness of the decedent constituted the sole cause of the collision; fifth, that the only reasonable inference from the evidence was that decedent caused his own death by his sole, or at least contributory, negligence and recklessness; and sixth, he was guilty of contributory negligence and wilfulness as a matter of law and, therefore, there was no issue of fact for the jury.

Thus the appeal presents the question: Was the evidence susceptible of a reasonable inference that the fatal collision proximately resulted from the negligence, recklessness or wilfulness of the appellant, its agents or servants, in any of the respects alleged in the complaint, and the decedent not guilty of contributory recklessness or wilfulness?

Most important in our consideration of the evidence is the statutory effect of the failure of the company and its servants to give the crossing signals, the sounding of the whistle and the ringing of the bell, at the places and in the

manner prescribed by the Code. Sections 8355 and 8377. If the jury found that there was such failure to comply with the law, it is rebuttably presumed that such delict contributed to the injury as a proximate cause and plaintiff is entitled to recover unless his decedent was guilty of contributory gross or wilful negligence; and the appeal is in effect that he *was* as a matter of law, and that no jury issue thereabout arose from the evidence. Let us then briefly review it.

Numerous witnesses testified that they saw the approach of the train and heard no crossing signals or heard such that fell short of conformity with the statute, from which it was certainly inferable that the signals were not given as provided by law. The testimony of other witnesses was to the contrary, which made the issue for the jury, and we must now assume that they were not given. *Cook v. A. C. L. R. Co.,* 196 S. C., 230, 13 S. E. (2d), 1, 133 A. L. R., 1144.

Turning to the evidence of the conduct of decedent to determine whether it should have been held by the trial court that it was reasonably susceptible only of the conclusion of gross or wilful conduct, we have no difficulty in affirming the trial judge in this respect and agreeing with him that the evidence thereabout created a factual issue for the jury.

All of the witnesses agree, including the train crew, that the automobile was driven upon the crossing at a very slow rate of speed and that a few feet therefrom it was brought practically, if not completely, to a stop, from which it is inferable that the driver was trying to effectively use his senses to determine whether a train was approaching. He had three ways to look for danger, to his right whence it came, ahead of him for other vehicles, and to his left at the other ends of the three railway tracks over any or all of which an unexpected train or trains might have also come.

There were admitted obstructions to his view. Helpful photographs and diagrams were in evidence and are before us. There was a tree with wide-spreading branches to the driver's right as he approached the tracks. The station building was there and a boxcar or cars on the siding, placed

variously in the conflicting testimony of the several witnesses; and there were two poles which afforded some additional obstruction to the view. An elaborate map of appellant undertakes to show the distances of clear vision which the driver had of the tracks to his right as he approached the crossing, at seventy-five feet, fifty feet and thirty-five feet. These, however, begin at the center of the street while the law required the automobile to be on its right, where the witnesses placed it; and, of course, the closer the driver was to the various obstructions, the more effective they were as such. The map cannot be fairly considered without keeping this in mind and also the further important fact that decedent had no less a duty to look to the left for trains approaching from that direction, and likewise ahead of him for other vehicles. Careful consideration of the evidence relating to the contended obstructions and the whole layout of the crossing has led convincingly to the conclusion that the issues thereabout were for the jury, the finders of the facts when there is any testimony, or fair inferences therefrom, upon which they may reasonably base their verdict.

The testimony of the train crew as to the lookout which they maintained and as to the speed at which the train was moving over the crossing is unsatisfactory, to say the least. The engineer was keeping a lookout to the right of the locomotive and did not see the approach of the automobile from the left, which may account for his acquittal of negligence by jury, but we are not concerned with that. He testified that his first knowledge came from the warning of the fireman to "hold it", meaning to apply the breaks, which he did in emergency, but then he was only about ten or twelve feet from the automobile. He further testified that he could have stopped the light train (only one coach) in a distance of about seventy-five feet at his speed of ten to twelve miles per hour, but he saw the automobile on the front of the engine after the impact, protruding to the right of it and thus coming within his vision, and he partially released the brakes in an effort to save decedent, whereupon the train proceeded 296 feet to a stop. He testified emphatically that

he would have stopped the train to avoid the collision if he had had the necessary distance.

The fireman was of opinion that it could have been stopped in forty to fifty feet if the wheels did not "pick up" (skid). The latter said that he was keeping a lookout to the left of the train and saw the approaching automobile when he was about forty to forty-five feet from the crossing and it was about fifty feet from the main track (having first seen it about one hundred and fifty-five feet away), whereupon he shouted to the engineer to the effect that the locomotive should be stopped, and the emergency brakes were applied. This witness testified repeatedly at another point in his examination that he first saw the automobile when it was about fifty feet from the main line. These and other conflicts in the testimony of these key witnesses for appellant are apparent from a reading of their evidence and one or the other or both of them must have strained the credulity of the jury whose duty it was to appraise them and their testimony.

The train was not scheduled to stop at the Springfield station and it was there given the signal to pass on. There are other nearby highway or street crossings which it passed before reaching this at the station and in the heart of the town. It had approached at considerable speed, fifty to sixty miles an hour, which had been lessened but there is sharp conflct in the opinions of the witnesses of the speed at which it was traveling when it came to this crossing. The fireman fixed the speed at twenty miles at the crossing just before, south of the station. The ordinance of the town limits the maximum speed of trains at crossings to fifteen miles per hour, within which the crew estimated it in testimony, but they were contradicted by other witnesses which plainly made this also an issue for the jury. The considerable distance which the extremely light train traveled after the collision was doubtless an important fact in this connection. The engineer undertook to explain it as has been said but the jury may have considered the unusual explanation incredible.

In view of the single issue finally involved in the appeal, it is really unnecessary to have discussed the testimony relating to the various acts of alleged negligence specified in the complaint. This is so because appellant expressly admitted in its argument before us that the evidence was in conflict as to the giving of the statutory crossing signals, the speed of the train at the time of the collision and whether the rate exceeded that prescribed by the applicable ordinance, the condition of the brakes on the locomotive and whether the boxcar, the poles and the tree materially obstructed the view of the decedent as he approached the crossing.

Instead of contesting these points, appellant concedes them in the brief and makes the futile contention in the first place that the most of the specified negligent acts went out of the case upon the failure of the jury to find a verdict against the engineer. But, as has been pointed out, this position was not taken in the trial court and is, therefore, unavailable to appellant in this Court.

It is further urged with respect to the obstructions that they constitute a ground for recovery only in connection with the manner of operation of the locomotive by the engineer; that the obstructions do not of themselves constitute negligence, but the existence of them imposed the duty on appellant to use care in the operation of the train commensurate with the increased hazard of the crossing. Granting such, it is an admission of appellant that its engineer (as well as the other crew-members) was under a duty to exercise added care on this occasion, and whether he was vindicated by the verdict is not before us. In connection with this phase of the facts, it should be observed that decedent's conduct immediately before the collision should be judged only in conjunction with consideration of the existence of the obstacles he encountered in looking for the train to his right before he drove upon the tracks. His lips are sealed in death and there is no surviving passenger in the automobile so it was necessary for the jury to find the facts without the aid of the testimony of anyone who was traveling in it.

Appellant submits three questions on appeal but the first and the last are made in contemplation of the claimed effect of the verdict for the codefendant-engineer. Therefore, they present no issue. The second question, and the only one involved in the appeal, embraces the contention that the collision was due to decedent's sole or contributory negligence, gross negligence or wilfulness. That there was evidence of negligence of appellant is demonstrated by the foregoing sketch of the testimony and the concessions of appellant in argument, which leaves for consideration only whether it was contributed to by decedent's conduct and that is restricted to whether he was guilty as a matter of law of gross negligence or wilfulness, the latter in view of the evidence of the failure of the appellant, its agents and servants, to give the statutory crossing signals and a further possibility that the jury may have found the appellant guilty of wilful and wanton negligence in other respects. The single issue before us is, therefore, quite narrow and we think we should determine it as did the trial judge. Of primary importance is the established rule that such question must be resolved upon consideration of the evidence and the reasonable inferences derivable from it in the light most favorable to respondent.

This case is a stronger one on the facts for respondent than was *Carter v. A. C. L. R. Co., supra,* in which we said:

"In our judgment it was clearly a question for the jury to determine whether the plaintiff's intestate was negligent or grossly negligent under the facts and circumstances narrated. From the evidence, the jury could reasonably have drawn the conclusion that in the exercise of due care, the decedent did look and listen at substantially the precise time and place when and where looking and listening was to the most advantage in view of the obstructions created by the freight depot and the boxcars.

"Conceding that there was a willful failure on the part of the defendants to give the statutory signals on the approach of the train to the crossing, should it be held as a matter of law that the sole, proximate cause of the fatal injury was the intestate's own conscious or reckless disregard of his

duty under the circumstances surrounding him as would charge him with gross contributory negligence? We think that it is apparent that the evidence is not susceptible of that inference as the only reasonable conclusion.

"It was held in *Ford v. Atlantic Coast Line R. Co.,* 169 S. C., 41, 168 S. E., 143 (decided by our Court *en banc* and affirmed on appeal to the Supreme Court of the United States, *A. C. L. R. Co. v. Ford,* 287 U. S., 502, 53 S. Ct., 249, 77 L. Ed., 457—interpolated) that if the facts 'in controversy and the inferences properly deducible therefrom are doubtful, or if they tend to show both parties guilty of negligence or willfulness and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question becomes issuable and must be submitted to the jury under appropriate instructions'."

The following recent cases are of considerable similarity in facts to that in hand and the decisions contain such full expositions of the governing principles of law that reference is made to them in lieu of further discussion here: *Carter v. A. C. L. R. Co.,* 192 S. C., 441, 7 S. E. (2d), 163; *Harrison v. A. C. L. R. Co.,* 196 S. C., 259, 13 S. E. (2d), 137; *Langston v. A. C. L. R. Co.,* 197 S. C., 469, 15 S. E. (2d), 758; and *Thompson v. S. R. Co.,* 208 S. C., 49, 37 S. E. (2d), 278.

The exceptions are overruled.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, TAYLOR and OXNER concur.

## ORDER

Upon consideration of the Petition for Rehearing of the above appeal, It is ordered that:

The second, third and fourth paragraphs on page 13 of the report of the opinion in Westbrook's Opinions, June 15, 1946, the same being the fifth, sixth and seventh paragraphs of the original opinion, are stricken out and the following substituted therefor:

It was expressly made upon the grounds formerly stated for appellant's prior motions for nonsuit and directed ver-dict, and the grounds of the latter included, in effect, the single ground of the former. The following is quoted from the transcript of record for appeal.

"Mr. Moss: Your Honor, at this time we wish to make a motion for a directed verdict in favor of the defendant the Southern Railway Company notwithstanding the verdict found by the jury, and we wish to make our motion for this directed verdict upon the grounds stated in our motion for a directed verdict stated at the close of the testimony. Your Honor, this motion is also made on the same grounds as the grounds stated in our motion for a nonsuit.

"The Court: I think I will have to overrule the motion for the reasons I gave in overruling your other motion for a directed verdict."

Much of appellant's able argument is bottomed upon the premise that the jury's favorable verdict for the engineer-defendant absolved the appellant from liability for the al-leged negligent and reckless acts and omissions of it which, it is contended, were most, if not all, the acts of the engi-neer, and the latter was found innocent by the jury. *Carter v. A. C. L. R. Co.,* 194 S. C., 494, 10 S. E. (2d), 17. But appellant is plainly not in position to claim any advantage from the verdict of acquittal of the engineer for it made no point of it in the trial court. The record is entirely clear thereabout.

Upon such alteration of the opinion, the Petition is dis-missed and rehearing denied.

July 10, 1946.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUS-TICES FISHBURNE, STUKES, TAYLOR and OXNER concur.