16159

CAMMER v. ATLANTIC COAST LINE R. CO., *ET AL.*

(51 S. E. (2d) 174)

*Messrs. Hagood, Rivers & Young,* of Charleston, *for Appellants,*

*Messrs. J. D. E. Meyer and Gedney M. Howe,* of Charleston, *for Respondent,*

December 15, 1948.

STUKES, Justice:

Respondent, who is a young woman about twenty-four, recovered against appellants verdict and judgment for $25,-000.00 actual damages and $5,000.00 punitive damages in this personal injury action. The appeal is from adverse rulings upon timely motions in the trial court for nonsuit, directed verdict, new trial and judgment *non obstante veredicto*.

The present husband of respondent was an enlisted man in the navy and on leave in Charleston to marry her. The wedding was set for Feb. 8, 1946 and on the night of Feb. 6 they were engaged in making arrangements for the event and in his automobile had visited a friend in the neighborhood to ask him to take some guests to the marriage. The return to her home necessitated passage on State Highway No. 642 over two tracks of the Southern Railway and, beyond and adjacent thereto, two tracks of Atlantic Coast Line Railroad Company. The location is known as Dorchester-Waylyn Crossing, about six miles from Charleston in the thickly populated section which is generally known as the North Charleston and Navy Yard areas. The automobile which was driven by respondent's husband, with her sitting beside him, approached the crossing in an easterly direction but for the purpose of traversing the parallel railroad tracks the highway turns left or northerly and on the other side connects with Meeting Street Road, to and from Charleston, and thereafter enters U. S. Highway 52. The crossing was equipped with automatic, electric signal lights. That on the driver's right before he entered the crossing was about 37 feet from the beginning or first rail of the tracks and respondent's car was stopped 20 feet before reaching the light in observance of the flashing danger signal and for the passage of a Southern Railway engine and caboose from the left to the right, toward Charleston. Meanwhile several other cars drew up behind them, similarly delayed. According to respondent's witnesses this engine stopped about 30 feet beyond the crossing whereupon the lights ceased to flash, which indicated safety ahead.

There had been rain of long duration earlier in the evening and the weather at this time, about 11:30 P.M., was cloudy and, as most of the witnesses said, hazy. Adding to the difficulty of clear vision, much smoke and steam were thrown out by the stationary Southern engine. Respondent's car proceeded slowly ahead, first in low gear and then intermediate, and covered the distance from its stop to the railroad tracks, about 57 feet, and then about the same distance on to and upon the second Coast Line track where it was struck from the right by the locomotive of a passenger train which was en route from Charleston to Savannah. The automobile nearly cleared the track before the collision. Its rear end was demolished and respondent was thrown clear of the wreckage where she was picked up unconscious by a passerby and taken by automobile to the nearby Naval Hospital. She lost one eye entirely, suffered a broken jaw and other painful injuries. She was married the next day in the hospital when her recovery was very doubtful.

The action for damages in the amount of $100,000.00 was brought against Atlantic Coast Line Railroad Company, C. D. Carr, who was the engineer of its train, and against Southern Railway, Carolina Division. Negligence was charged against the last named particularly with reference to the operation of its engine and caboose. The verdict and judgment were only against the appellant Coast Line and its engineer, the appellant Carr; no damages were found against the Southern. This is the foundation of a point of appellant which will be first discussed, possibly out of proper order. It is urged that the allegations and evidence of excessive speed of the train and the failure to give the crossing signals are not effective to fix liability upon appellants in view of the acquittal by the jury of the Southern of the acts of negligence charged to it with respect to the operation and stopping of its engine and caboose in the line of vision of the driver of the automobile. Only the cases of *Carter v. Atlantic Coast Line R. Co.,* 194 S. C. 494, 10 S. E. (2d) 17, and *Gleaton v.*

*Southern Ry. Co.,* 208 S. C. 507, 38 S. E. (2d) 710, are cited in support of the contention.

The cited authorities are not pertinent. They control when a master and servant are jointly sued for damages resulting from the act or acts of alleged negligence of the servant and the servant is acquitted of negligence by the verdict, which will then not stand alone against the master. Liability in such a case results from application of the rule of *respondeat superior* and the simple converse of it is that there is no liability upon the master if none upon the servant. This situation is not at all present in the case in hand. The contended acts of negligence of the Southern were found not to be such by the jury, or at least not a proximate cause of respondent's injuries; but conditions may have resulted from the agency of them which should have affected the conduct of respondent and appellants alike, and the jury may well have given weight to these conditions in determining the standard of care which was required of the other litigants under the circumstances. Moreover, it is well settled that concurrent tort-feasors may be joined as defendants and recovery had against one or more or all. Applicable is the following excerpt from the opinion in *Pendleton v. Columbia Ry., Gas & Electric Co. et al.,* 133 S. C. 326, 131 S. E. 265, 267: "When a plaintiff joins two or more alleged wrongdoers as parties defendant in one action, such joinder in itself necessarily implies that he has elected to treat his injury as a joint tort, and to recover upon the theory of joint liability. Such election to sue upon the theory of joint liability logically involves the relinquishment of the right in that action to raise a 'separable controversy' with any one defendant and to recover against one or more separately upon the theory of several liability in any sense other than that *the plaintiff in such joint action is not bound to recover against all, but may recover against one or more and not against others."* (Emphasis added.) Also see: *Landreth v. Atlantic Refining Co..* 177 S. C. 490, 181 S. E. 727, and *Boyd v. Maxwell,* 190 S. C. 103, 2 S. E. (2d) 395.

The gravamen of the appeal is that the evidence was insufficient to establish any negligence of appellants which was the proximate cause of the collision and that, on the contrary, it established that respondent's driver was guilty of gross contributory negligence or willfulness. These are conclusions of fact which are ordinarily, of course, the duty of the jury to determine. The function of the court is only to inquire whether they are the only reasonable inferences from the evidence. There was a great deal of testimony in behalf of respondent that the crossing signals were not given by the train in accord with Section 8355 of the Code of 1942. That fact, if established to the satisfaction of the jury, raised a rebuttable presumption that such delict was a proximate cause of the collision. Moreover, respondent's husband, the driver of the automobile, may have been guilty of simple negligence without defeating her right to recover. For the latter effect to obtain he must have been found by the jury to have been guilty of gross or willful negligence. Sec. 8377. See the decisions cited in the footnotes to these sections in the Code. In addition to these considerations which militate against sustention of the appeal it must be considered by this court, in view of the evidence and verdict for respondent, that the statutory crossing signals were not properly given. *Cook v. Atlantic Coast Line R. Co.,* 196 S. C. 230, 13 S. E. (2d) 1, 133 A. L. R. 1144.

The accident occurred at night when visibility was poor, in the first place because of clouds and haze from recent rain, to which were added in the heavy atmosphere the smoke and steam from the Southern engine which itself partially obstructed the view in the direction of the train's approach. The gist of the testimony of respondent and her husband is that they entered the crossing slowly after the Southern engine, for which they waited, had passed and the flashing lights were out and they looked and listened for other approaching trains but saw and heard none. It is significant that about five cars followed them into the crossing; respondent's car merely happened to lead the line of

traffic. Several of the occupants of these other automobiles testified that they too entered the crossing only after the signal lights had ceased to function and they were unable to see or hear the approach of the Coast Line train on the furthermost track, until it struck respondent's car. The trial judge who saw and heard the witnesses and observed their demeanor on the stand reviewed the lengthy evidence in unusually painstaking manner in his order refusing new trial and judgment *non obstante,* and we are not convinced that he committed error. It would serve no useful purpose to now re-state the evidence further.

Appellants question in argument the availability to respond of the fact averred in the evidence by her and by numerous of her witnesses that the warning, flashing lights were not operating when the automobile entered the crossing and until the collision occurred. Reference, however, to the complaint discloses allegation thereof in two paragraphs where it is said that, quoting, "the flashing lights stopped blinking." The fact is important whether it is alleged to prove negligence of the company or, as here, is relevant upon the question of contributory negligence or contributory willfulness. Similar, if not identical, warning lights were installed at the crossing involved in *Bishop v. Atlantic Coast Line R. Co.,* 213 S. C. 125, 48 S. E. (2d) 620, where the effect of like testimony was not decided for the reason that there was no allegation in the complaint in that action that the signals were out of order or operating improperly. The substance of the contention there was, and here is, that the fact-finding body may properly decide that a motorist may rely upon such warning signals and when they are present but not operating may take it as an assurance of safe entry upon the crossing.

> Automatic warning lights and similar devices at crossings may not be soundly said to relieve one of all care save obedience to their signal. The test is, as usual, the conduct of the average, reasonably prudent person,

under the existing conditions. But put there to warn of danger, when the warning ceases a resulting assumption of safety reasonably arises. This will hardly escape the jury, and should not. The circumstance is properly an element of the applicable standard of due care. This was the rule applied in the instruction to the jury, unexcepted to, in our case of *Ballard v. Southern Ry. Co.*, 197 S. C. 288, 15 S. E. (2d) 342, where the law of North Carolina was controlling. It is approved by the authorities generally. The following quotation is from 44 Am. Jur. 817, Railroads, Sec. 563, and in the footnotes are found citations of several annotations to which reference may be had:

"In perhaps a longer line of decisions it is held that while the failure of a signaling device at a railroad crossing to operate and warn of the approach of a train does not entirely relieve a traveler from his duty to look and listen for an approaching train, nevertheless the traveler may rely to some extent on the apparent safety implied from the silence of the signal, and such silence of the signal is a circumstance to be taken into consideration by the jury on the issue of contributory negligence. The failure to give the signals raises the presumption of safety, but such failure is no more than a circumstance which may properly be taken into consideration in determining the ultimate question of whether he did exercise the degree of care required or not. And, in determining whether he did exercise such care, his conduct at the time is to be judged in the light of such presumption."

An interesting conflict in the testimony revolved about that of respondent's witness, Allen. He is a former employee of the Southern and testified that he was one of the crew of its engine on this occasion and his evidence was favorable to respondent. He was contradicted by other Southern employees who said that he was in an entirely different crew and at the time of the collision was engaged in his duties at a point about two miles distant from the crossing. Similar conflict arose with respect to the testi-

mony of appellants' witness who said that he carried respondent from the wreck to the hospital. Respondent produced the navy man in charge of the reception of patients who testified that another brought respondent in. Then appellants introduced in evidence the hospital records to show to the contrary. Contradictions of witnesses by others are for solution by the fact-finders, the jury. It was for them to pass upon the credibility of the witnesses and give such weight to the testimony and all parts of it as in their judgment was deserved. These are elementary observations which need no citation of sustaining authorities. None was cited by counsel to the contrary.

The last question raised by the exceptions relates to the amount of the verdict. It is urged that it is excessive and indicates passion and prejudice on the part of the jury. The point was properly made before the trial judge, who, in his well-reasoned order, declined to interfere. It was within his discretion. The case is not one which requires the rare exercise of the power of this court to reverse on that ground. *Bowers v. Charleston & W. C. Ry. Co.,* 210 S. C. 367, 42 S. E. (2d) 705. The serious and permanent nature of respondent's injuries have already been briefly, but sufficiently, stated. The most of her life is before her and she is undoubtedly severely handicapped.

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.