16439

CONYERS v. ATLANTIC COAST LINE R. CO., *ET AL.*
(62 S. E. (2d) 478)

*Messrs. Douglas McKay,* of Columbia, *and Reynolds & Reynolds,* of Sumter, *for Appellant,*

*Messrs R. Kirk McLeod and Henry B. Richardson,* of Sumter, *for Respondent,*

December 4, 1950.

Oxner, Justice.

This is an action under Lord Campbell's Act, Sections 411 and 412 of the 1942 Code, to recover damages for the alleged wrongful death of George Lee Conyers, who died instantly as a result of injuries received in a collision between an automobile driven by him and a freight train of the Atlantic Coast Line Railroad Company, which occurred about 9:20 P.M., on Saturday, March 19, 1949, at a crossing within the corporate limits of the town of Pinewood, where the main line and a side track of the Railroad Company are intersected by State Highway No. 261. The case was tried in January, 1950, and resulted in a verdict for the plaintiff against the Railroad Company, the engineer, and the conductor in charge of the train, all of whom were joined as parties defendant, in the sum of $3,250.00. From the

judgment entered thereon, the defendants have appealed and state the question involved as follows: "Did the trial court err in refusing to direct a verdict or grant judgment *non obstante veredicto* for the defendants upon the ground that the only inference to be drawn from the entire testimony was that the death of plaintiff's intestate was, due, caused and occasioned, or contributed to, as a proximate cause thereof by his own negligence, gross negligence, recklessness and willfullness, as a matter of law?"

Respondent's intestate, a Negro boy seventeen years of age, resided with his father and mother about eight miles from Pinewood. Although the deceased had made occasional trips to Pinewood, it may be reasonably inferred from the evidence that he was not very familiar with this crossing. On the night in question he was driving his father's car. There were two Negroes sitting beside him and two on the back seat. It is not contended that any of them were under the influence of intoxicants.

State Highway No. 261, a heavily traveled thoroughfare, is paved and runs approximately east and west. That portion within the corporate limits of the town of Pinewood is known as Main Street and intersects the main line and side track of the railroad company at approximately right angles. The side track is about eight or ten feet east of the main track. For a considerable distance in the town of Pinewood, State Highway No. 120 runs parallel to the railroad track and adjoins the right of way. It is intersected at right angles by Highway No. 261 at a distance of 65 or 70 feet from the main line track of the railroad company. The railroad track is elevated about two or three feet above these highways, making a slight upgrade in approaching the crossing in controversy along State Highway No. 261.

Respondent's intestate was traveling on State Highway No. 261 and approached the crossing from the west. In doing so, he first crossed Highway 120 and then proceeded approximately 65 or 70 feet to the crossing where he collided with a train traveling on the main line track in a southerly

direction. As he approached this crossing, his view of a train approaching from the north was first obstructed by a line of buildings along the western side of Highway No. 120. Upon reaching Highway No. 120, his view to the left was again obstructed by a line of crepe myrtle trees with a limb spread of about fourteen feet, located on the eastern side of Highway No. 120. On the night in question his view to the left, according to respondent's testimony, was further obstructed by four or five automobiles parked between or near the crepe myrtle trees. One of respondent's witnesses testified that several of these cars were parked within eighteen feet of the track. It is the contention of the appellants that none of these obstructions prevented the deceased from seeing a train approaching from the north after he reached a point about 64 feet from the crossing. We are not altogether sure that this is the only reasonable inference warranted by the testimony but we may assume for the purpose of this discussion that the deceased had an unobstructed view to the left after reaching a point 60 or 65 feet from the crossing.

It is undisputed that the deceased was driving between ten and fifteen miles an hour as he approached this crossing. Respondent's witnesses testified that the train, which consisted of sixty cars, approached the crossing at a speed of approximately sixty miles an hour. Several of appellants' witnesses estimated the speed of the train at 45 to 50 miles an hour. The engineer and fireman testified that as the train approached the crossing, the speedometer showed that it was traveling between 34 and 35 miles an hour. The maximum speed permitted by an ordinance of the town of Pinewood was 35 miles an hour. Thirty-six cars passed over the crossing before the train stopped. According to respondent's testimony, the engine struck the left front side of the automobile and "knocked it around", while the engineer said that the automobile ran into the side of the engine.

No issue is raised on this appeal as to the sufficiency of the evidence to establish negligence on the part of appellants. There is not only evidence of negligence but also of recklessness and wilfulness in running this train at a rate of speed in excess of that permitted by the town ordinance. *Dyson v. Southern Railway,* 83 S. C. 354, 65 S. E. 344. While it seems to be undisputed that the whistle or air horn (the freight train was pulled by three diesel engines) was blowing just before and at the time the engine reached the crossing, we think there was some evidence, although rather weak, tending to show that the crossing signals were not given for the full distance required by the statute. Evidently appellants' counsel entertained this view for they did not ask for the elimination of the charge that the statutory signals were not given and there was also no appeal from the action of the trial Judge in submitting this issue to the jury. It is true that at the conclusion of the testimony, the trial Judge remarked that he didn't "see the necessity of submitting the issue of punitive damages", to which respondent's counsel replied: "We will agree not to submit punitive damages." However, the fact that this issue was withdrawn was not tantamount to an adjudication that simple contributory negligence was a good defense and is of no aid to appellants in determining whether the Court below erred in refusing their motion for a directed verdict. *Mishoe v. Atlantic Coast Line Railway Co.,* 186 S. C. 402, 197 S. E. 97.

We now turn to the only questions raised by appellants. Was the death of deceased brought about by his own negligent or reckless conduct? If not, was he guilty of contributory negligence, gross negligence and wilfulness as a matter of law? It must be conceded that he was not driving at an excessive rate of speed, so that we need only inquire whether he was guilty of negligence and recklessness as a matter of law in failing to properly look and listen for approaching trains. Although there were four other occupants of the car, all of whom survived the accident, only the two who sat on the back seat testified. Both said that in approaching the

crossing, the deceased looked to the left and then to the right and later slowed down just before reaching the crossing, but they were not in exact accord as to when he looked. One of them said that he did so about the time the car passed the crepe myrtle trees while the other thought the deceased looked when he was somewhat closer to the crossing. Of course, we have no way of determining when the deceased first saw the approaching train. One of the witnesses just mentioned said that he (the witness) first saw the train about the time the car passed the crepe myrtle trees and the other stated he did not see the train until they were about twenty feet from the crossing. Both the engineer and the fireman testified that they did not see the approaching car until it was about thirty feet from the crossing, at which time the train was about 75 feet from the crossing, and that they thought that the driver was going to stop.

While the jury would have been fully warranted in finding that the deceased was guilty of contributory negligence, we are not inclined to think that this is the only reasonable inference to be drawn from the testimony. In any event, we cannot say as a matter of law that the deceased was guilty of gross contributory negligence or recklessness.

Viewing the evidence in the light most favorable to respondent, as we must in determining whether the Court below erred in refusing appellants' motion for a directed verdict, the situation is this: The deceased was approaching on a dark night an obstructed railroad crossing with which he was not very familiar. He first had to cross a state highway which intersected the highway on which he was traveling a short distance from the railroad crossing. His view of a train approaching from the left was very limited. It was his duty to look not only to the left but also to the right for approaching trains. His view to the right was also obstructed by a truck and several automobiles parked between State Highway No. 120 and the railroad tracks. It was also his duty to watch for automobiles along the highway. He looked both to the right and to the left as

he approached the crossing and must at some point have seen the approaching train for he slowed down just before reaching the crossing. This train was approaching this dangerous crossing at a speed of sixty miles an hour. We think the question of whether the deceased, by the reasonable use of his senses in the performance of his duty to look and listen under the circumstances surrounding him, could have discovered the presence of the approaching train in time to avoid the accident, was properly submitted to the jury.

It is true that ordinarily the beam of the headlight might have been sufficient to warn him that a train was approaching but the crossing in question was in the center of the town near stores, filling stations and other business establishments, some of which had their lights burning. There were also street lights burning in this area. All of these lights, along with those from any approaching cars, might have been confusing. The light from the engine might have been confused with that of an automobile traveling along State Highway No. 120 which is parallel to the railroad track. In fact, such possibility was conceded by one of appellants' witnesses who testified as follows:

"Q. Was it (light from the train) an exceeding bright light? A. No, no more than usual, looked about like all train lights to me.

"Q. Did it look sort of like a car light? A. I wouldn't say it looked like a car light.

"Q. Well, could it be confused with a car light? A. I imagine it could be if the traffic was very heavy."

We shall not undertake to separately evaluate each of the circumstances which we have mentioned. It is sufficient to say that all of them, when considered together, do not show contributory gross negligence and recklessness as a matter of law. As stated by the Court in *Cook v. Atlantic Coast Line Railway Co.,* 196 S. C. 230, 13 S. E. (2d) 1, 4, 133 A. L. R. 1144: "It is rare that negligence or contributory negligence is dependent on a single fact. On the contrary,

it is to be determined by a consideration of all the relevant surrounding circumstances."

The law governing the relative duties of a traveler and those in charge of a train in approaching a railroad crossing is well settled. The difficulty is in applying these well established principles to the facts of a particular case. Without undertaking to review the numerous decisions of this Court bearing on the question under consideration, none of which perhaps can be said to be precisely in point, we think the following cases tend to sustain the conclusion herein reached: *Jennings v. Northwestern Railroad Co. of S. C.*, 138 S. C. 385, 136 S. E. 639; *Brogdon v. Northwestern Railroad Co. of S. C.*, 141 S. C. 238, 139 S. E. 459; *Cook v. Atlantic Coast Line Railway Co. et al.*, *supra*; *Harrison v. Atlantic Coast Line Railway Co.*, 196 S. C. 259, 13 S. E. (2d) 137; *Langston v. Atlantic Coast Line Railway Co.*, 197 S. C. 469, 15 S. E. (2d) 758; *Norwood v. Atlantic Coast Line Railway Co.*, 203 S. C. 456, 27 S. E. (2d) 803; *Gleaton v. Southern Railway Co.*, 208 S. C. 507, 38 S. E. (2d) 710.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.