### 16957

MONTAGUE H. JACOBS, as Administrator of the Estate of Martin L. Williams, Deceased, Respondent, v. ATLANTIC COAST LINE RAILROAD COMPANY et al., Appellants

(85 S. E. (2d) 749)

476

*Messrs. J. D. O'Bryan,* of Kingstree, and *Willcox, Hardee, Houck & Palmer,* of Florence, *for Appellants.*

*William E. Jenkinson, Esq.,* of Kingstree, *for Respondent.*

February 3, 1955.

STUKES, Justice.

Respondent's intestate was instantly killed at about four o'clock A. M. on November 12, 1950, when he slowly drove his heavily loaded truck-tractor in front of an approaching passenger train of appellant railroad on the southbound track of the grade crossing over Main Street in Kingstree. The street was undergoing repairs and the pavement was out on both sides of a canal bridge which the truck driver had to cross just before he reached the railroad crossing.

The plaintiff's principal witness was a city policeman who was sitting in his parked car at the curb facing the crossing four or five hundred feet away when the truck passed him from behind. He said that it choked and stalled before getting out of the depression at the bridge, then moved very slowly on to the railroad tracks and could have been stopped by braking within a distance of about five feet. The witness heard the whistle of the train as it approached. There was an automatic flashing light near the first track (the collision was on the second track), which the witness said did not begin to flash until after the truck

passed it. It was put in operation by contact of the train at a point about 2,500 feet above the crossing and members of the train crew testified that they saw the signal go into operation and continue until the collision. In addition to the usual headlight the locomotive was equipped with a Mars, revolving light, both of which were burning.

The view of respondent's intestate of the train, as he approached the crossing, was obstructed by buildings until he reached a point about seventy feet from the first track when he then had a view up the tracks of about 200 feet, thus limited because of the acute angle of the intersection; closer, he could see farther and when he reached a point about fifty feet from the first track he could have seen the approaching train for an indefinite distance. There are three other grade crossings within the town on the route of the train's approach, which required constant signals until the Main Street crossing was reached and it is undisputed that they were duly given on this occasion; indeed, respondent's eyewitness testified that he heard them.

The trial judge refused appellants' motions (except as to the conductor of the train) for nonsuit, directed verdict and judgment *non obstante veredicto*. The jury returned verdict for respondent against the railroad company and the engineer, who was the other personal defendant. The appeal turns upon whether the evidence, considered most favorably to respondent, was sufficient to sustain the verdict despite appellants' plea of contributory negligence on the part of the deceased.

This is an unusual railroad crossing case in that all parties agree that the statutory crossing signals were properly given. In that feature the case resembles *Taylor v. Atlantic Coast Line R. Co.*, 217 S. C. 435, 60 S. E. (2d) 889, in which the jury found, in effect, that the signals were given, and judgment for plaintiff was reversed on appeal because the evidence showed that the motor vehicle driver was guilty of contributory negligence as a matter of law.

Respondent argues several alleged elements of negligence, to wit, the failure of the automatic crossing light to function, the speed of the train, the failure of the crew to keep a proper lookout and of the engineer to sooner apply the emergency brakes. Conceding without deciding that there was evidence as to each of these from which the jury may have inferred negligence, we do not think that it could reasonably be determined to have been more than simple negligence, to which the manifest contributory negligence of the deceased was a defense. He entered the crossing at such a slow rate of speed that respondent's own witness testified that he could have stopped within about five feet. His approach included a distance of about seventy feet during which he could have looked up the tracks and seen the train and its lights, and from a considerably greater distance, could have heard the signals of the train had he listened, just as the respondent's policeman-witness did. We cannot escape the conclusion that the deceased was guilty of at least simple contributory negligence which was a proximate cause of the collision and, therefore, bars recovery as a matter of law.

It was also the trial court's view, which we affirm, that there was no evidence of recklessness, willfulness or wantonness on the part of appellants, and he refused to submit to the jury the issue of punitive damages. The verdict was for $12,000.00 actual damages. Respondent nevertheless submitted as a sustaining ground, and argues, that the court erred in refusing to submit the issue of recklessness, etc., of appellants, of which he contends there was evidence, whereby simple contributory negligence does not bar recovery. For this position he cites *Mishoe v. Atlantic Coast Line R. Co.,* 186 S. C. 402, 197 S. E. 97, and *Conyers v. Atlantic Coast Line R. Co.,* 218 S. C. 278, 62 S. E. (2d) 478. But in both of these cases there was evidence of failure of the train to duly give the statutory crossing signals; and in the last cited that it was also being operated at a rate of speed in violation of an applicable municipal ordinance.

Further adverting to respondent's contentions of negligence of the instant appellants, in several cases we have considered the effect of the alleged failure of automatic crossing lights to function. *Cammer v. Atlantic Coast Line R. Co.,* 214 S. C. 71, 51 S. E. (2d) 174. *Jennings v. McCowan,* 215 S. C. 404, 55 S. E. (2d) 522. *Vernon v. Atlantic Coast Line R. Co.,* 221 S. C. 376, 70 S. E. (2d) 862. The presently pertinent gist of them is that one cannot blindly depend upon such lights but must use his senses of sight and hearing as best he can under the circumstances to ascertain the approach of a train, although the light is not flashing the danger signal. There was evidence of nothing else in the case at hand to distract the truck driver's attention from the approaching train. There was at the time no other railroad or highway traffic.

The train had a fast schedule, was running late and the only reasonable inference from the evidence is that its speed was about eighty miles per hour. Conceding again, without deciding that such speed at the time and place of the collision might have been found by the jury to have been negligence, it could not, we think, be reasonably held to be more than simple negligence. No statute or municipal ordinance forbade this speed at the time and place, and the schedule of the train required it. Compare *Moore v. Atlantic Coast Line R. Co.,* 192 S. C. 406, 7 S. E. (2d) 4, where the speed of the train was seventy miles per hour and there was evidence that the statutory crossing signals were not given, yet direction of verdict for the defendant was sustained.

The engineer testified that he saw the headlights of the truck as it approached the crossing, running very slowly. His direct examination at this point follows:

"A. I sat there and looked at him, I thought he was going to stop. I see it every day, and he came up slow, I don't think he was running over five or eight miles an hour at the most, and I thought he was going to stop every minute,

and as we got closer the fireman said he was going to come on up there, and I was going to hit him.

"Q. Did he ever stop? A. No.

"Q. What did he do? A. He drove up on the track.

"Q. Now what did you do when you realized he wasn't going to stop? A. Put the brakes in emergency.

"Q. About how far were you from the crossing at that time? A. I reckon five or six hundred feet."

On cross examination the engineer would not deny, although he said that he did not remember, his following testimony at the inquest which was verified by evidence in reply:

"Q. Did you see this truck, Mr. Whitley? A. Yes, sir.

"Q. At what time did you see it? A. Well, pretty close to it, I couldn't tell you exactly the place.

"Q. Well, just about. A. Well, we had crossed those two crossings and were coming on to the Main street crossing when I saw it coming across.

"Q. Did you attempt to apply the brakes when you saw it, or you knew it wasn't no use or what? A. Just as soon as I saw it wasn't a gasoline truck I put the brakes in emergency and closed the throttle, I put it in emergency and closed the throttle rather, it is."

The following is from his redirect examination:

"Q. Mr. Whitley, if you had put your brakes in emergency when you first saw the truck would it have been possible for you to stop before you got to that point? * * * A. No. I couldn't have stopped it."

On this subject the fireman testified as follows:

"Q. Did you see this truck as it was approaching, coming up to the crossing? A. No, sir; when I saw it, it was coming up to the southbound track.

"Q. And what happened then? A. Well, he was moving like a slow moving picture and the last I realized he wasn't going to stop I hollered to the engineer, you are going to

hit him, look out, or something like that, and I jumped in the engine room.

"Q. Is that when the emergency brakes went on? A. Yes, sir."

Again it may be said, as with reference to the contention concerning the speed of the train, the evidence is insufficient to reasonably infer more than simple negligence of the engineer and fireman, at most.

Reversed and remanded for entry of judgment in favor of appellants.

BAKER, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.