18017

A. C. GOSSETT d/b/a Gossett Pipe Company, Respondent, v. PIEDMONT & NORTHERN RAILWAY COMPANY, Appellant. Ernest BLAKELEY and United States Fidelity & Guaranty Company, Respondents, v. PIEDMONT & NORTHERN RAILWAY COMPANY, Appellant.

(129 S. E. (2d) 326)

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Appellants,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-ville, *for Respondents,*

January 22, 1963.

BRAILSFORD, Justice.

These actions for personal injury and for property damage, incurred in a daytime crossing collision between a truck and a locomotive, were tried together in the court below and re-sulted in verdicts in favor of Blakely, the driver of the truck, and of Gossett, its owner. The railway company has appealed on one record. The sole issue here is whether verdicts should have been directed for the defendant upon the ground that Blakely was guilty of gross contributory negligence as a matter of law. We approach a decision assuming that the statutory signals were not given by the locomotive and that an automatic signaling device by which the crossing was guarded failed to operate. Both of these issues were resolved against the defendant by the verdicts and the sufficiency of

the evidence to require submission of them has not been challenged by exception.

The crossing is over heavily traveled Old Buncombe Road, in or near the city of Greenville. Blakely was employed as a truck driver at the nearby Gossett plant and was thoroughly familiar with the crossing and with the operation of the automatic signaling device. The train approached the crossing from the south and Blakely from the east. Old Buncombe Road passes under the tracks of the Southern Railway Company some 200 feet east of the crossing. On the day of the collision, high bushes and vegetation along the south side of the roadway obstruced a traveler's view of defendant's tracks for some distance west of the underpass. The evidence is conflicting as to how far this growth extended toward the crossing. Both Blakely and Gossett testified that it extended to the tracks. Defendant's principal witness on visibility testified that at a point 90 feet east of the crossing a train could be seen when 120 feet south of it; and that from a point 50 feet east of it there were no obstructions of consequence. Photographs in evidence tend to support the testimony of this witness. However, in reviewing the proceedings below for errors of law only, we can not accept these photographs as conclusive evidence. The record fails to disclose the date on which they were taken and does not connect them with conditions at the crossing on the date of the collision, some 18 months prior to the date of the trial. Furthermore, the engineer, who was seated, on the side of the locomotive next to the truck and whose duty it was to keep a lookout, stated, at one point in his testimony, that he did not see the truck until the locomotive was within six or eight feet of the crossing. The degree and extent of obstructions to vision on the approach to the crossing were questions for the jury.

As the truck and locomotive approached the crossing, there was a flow of traffic in both directions on Old Buncombe Road. A west bound bus stopped short of the crossing to let off a passenger. The driver noticed the approach

of the train and waited for it to pass. However, other west bound vehicles continued to cross after the locomotive was so near the intersectioin that, in the opinion of the conductor, they should have been stopped. This was a circumstance to be considered in determining the degree of care reasonably to be expected of Blakely and, possibly, further obstructed his view of the train without his being aware of it.

The speed of the truck was variously estimated at from 15 to 35 miles per hour and that of the train at from 15 to 20 miles per hour. The collision occurred in the truck's lane of travel, after the locomotive had crossed the east bound lane. The front of the truck collided with the right front of the locomotive.

Blakely testified that as he approached the tracks, he looked and listened for a train, that "there wasn't no light, no bell, no whistle, no nothing;" the automatic signal, located near the track on his right hand side of the roadway, was not burning or flashing; that he looked in both directions; ("I done looked and I never seen it * * * Fer as I could see was the bushes * * * At the rails I was looking at the crossing and listening.") ; and that he did not see the locomotive until it was upon him.

If Blakely had looked to his left immediately before committing himself to entry upon the crossing, he could have seen the train in time to avoid the collision. Appellant, recognizing that simple contributory negligence is not a defense to this action under the terms of Sec. 58-1004, Code of Laws 1952, contends that his failure to do so convicts him of gross or willful negligence as a matter of law. Reliance is, of course, upon such cases as frequently cited and applied *Robison v. Atlantic C. L. Railway Co.*, 179 S. C. 493, 184 S. E. 96, in which the firmly established rule as to the duty of a traveler to effectively exercise his senses before entering upon a railway crossing is strongly stated. However, our decisions, including Robison, recognize that the rule barring recovery as a matter of law by one who fails to make effective use of the opportunity to see an ap-

proaching train is "[s]ubject to applicable qualifications and limitations." The duty of a traveler is not an absolute one but may be qualified by attendant circumstances.

*Chisolm v. Seaboard Air Line Ry.*, 121 S. C. 394, 114 S. E. 500. The opinion in this often cited case specifies certain conditions which will usually qualify the duty and excuse the failure to look and listen effectively, at least to the extent of making contributory negligence a jury issue; among them, "* * * where the traveler enters upon the track under an express or implied assurance of safety, as where gates are open or signals are given by watchmen." This condition may be readily equated to the failure of an automatic signaling device to flash its intended warning, and evidence of such failure has been given weight in several of our decisions in which submission of the issues to the jury was affirmed. *Cammer v. Atlantic Coast Line R. Co.*, 214 S. C. 71, 51 S. E. (2d) 174. *Jennings v. McCowan*, 215 S. C. 404, 55 S. E. (2d) 522. *Vernon v. Atlantic Coast Line R. Co.*, 221 S. C. 376, 70 S. E. (2d) 862. Quoting from Vernon: "The rule in this State with respect to railroad crossing signal lights was stated in *Cammer v. Atlantic Coast Line R. Co.*, 214 S. C. 71, 51 S. E. (2d) 174, 177, and followed in *Jennings v. McCowan, supra*. From the former the following is taken: 'The fact (failure of crossing lights) is important whether it is alleged to prove negligence of the company or, as here, is relevant upon the question of contributory negligence or contributory willfullness. * * * The substance of the contention * * * is, that the fact finding body may properly decide that a motorist may rely upon such warning signals and when they are present but not operating may take it as an assurance of safe entry upon the crossing. Automatic warning lights and similar devices at crossings may not be soundly said to relieve one of all care save obedience to their signal. The test is, as usual, the conduct of the average, reasonably prudent person, under the existing conditions. But put there to warn of danger, when the warning ceases a resulting assumption of safety reasonably arises. This will

hardly escape the jury, and should not. The circumstance is properly an element of the applicable standard of due care.' "

In *Jacobs v. Atlantic C. L. R. R. Co.,* 226 S. C. 475, 85 S. E. (2d) 749, it was held that the assumed failure of a crossing signal did not raise a jury issue, where it was undisputed that the statutory signals were given, simple contributory negligence was a defense, and the driver had a clear view of the track during the last 70 feet of his slow approach to the crossing, especially since, quoting from the opinion: "There was evidence of nothing else in the case at hand to distract the truck driver's attention from the approaching train. There was at the time no other railroad or highway traffic."

Manifestly, the *Jacobs case* is not controlling here. The facts with which we deal are more similar to those in *Jennings v. McCowan, supra,* 215 S. C. 404, 55 S. E. (2d) 522, where the view of the railway track was partially obstructed, the evidence was conflicting as to the statutory signals, the driver, who was killed in the collision, was seen to look up and down the track before attempting to cross, and the crossing signal, with which he was familiar, did not operate in time to warn him of the approach of the train.

Gross negligence within the meaning of Sec. 58-1004, *supra,* which must appear as the only reasonable inference from the record to justify reversal, has been defined to be a failure to exercise slight care or "negligence so gross and reckless as to amount to willfullness." *Ford v. Atlantic Coast Line R. Co.,* 169 S. C. 41, 168 S. E. 143. Here, the testimony warrants an inference that Blakely's view of the track was obstructed until he was close upon it. He was entitled to rely to some extent upon the absence of the statutory signals and the failure of the crossing signal to flash a warning. It would be reasonable to infer that his vigilance was further blunted by the continued movement of traffic over the crossing as he drew near. It may also be inferred that he approached the crossing at a

reasonable speed and undertook to verify the assurance of safety arising from the absence of signals by looking and listening before entering upon the crossing. Under the circumstances of this case, his testimony that he did look and listen cannot be disregarded as incredible. Instead, it lends support to the jury's finding that he was not entirely heedless. *Harrison v. Atlantic Coast Line R. Co..* 196 S. C. 259, 13 S. E. (2d) 137. The fact that he failed to again look to his left from a point at which he would surely have seen the train can not soundly be held to establish gross negligence as a matter of law. Under all of the evidence, the issue was one of fact for the jury. *Carter v. Atlantic Coast Line R. Co.,* 192 S. C. 441, 7 S. E. (2d) 163.

The conclusion which we reach is supported by our own decisions, some of which have been cited, and by the weight of authority from other jurisdictions. 75 C. J. S., Railroads, § 878; 44 Am. Jur., Railroads, Sec. 563.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.